## Maryland Casualty Company v. Marshall.

## Same v. Ward et al.

(Decided October 26, 1928.)

### Appeals from Harlan Circuit Court.

1. Appeal and Error.—A supersedeas bond, executed on appeal from circuit court, is void as a statutory bond, under Civil Code of Practice, sec. 748, where circuit court had no jurisdiction to grant such appeal.

2. Appeal and Error. — Supersedeas bond on appeal from circuit court, void as statutory bond because of circuit court's want of jurisdiction to allow appeal, held valid as common-law undertaking to pay the obligees all costs and damages and to perform judgments, if affirmed.

3. Appeal and Error.—Undertaking to secure stay of execution of judgment on appeal, allowed without jurisdiction so to do by the circuit court, held not invalid as common-law undertaking for want of consideration, where the obligees refrained from attempting to enforce the judgment.

4. Appeal and Error.—Dismissal of appeals by Court of Appeals for want of jurisdiction held to constitute in effect an affirmance of judgments appealed from, within undertakings on appeal to pay judgments appealed from, if affirmed by Court of Appeals.

SAMPSON & SAMPSON, D. H. HILL ARNOLD, and E. C. O'REAR for appellant.

J. B. SNYDER and J. G. FORESTER and MORRIS & JONES for appellees.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

As these two cases involve the same question, they will be disposed of by one opinion.

These suits arise out of two earlier suits, which reached this court under the style of Wallins Creek Collieries Co. v. Marshall and Wallins Creek Collieries Co. v. Ward, reported in 217 Ky. 647, 290 S. W. 519. In those cases Marshall and a number of other employees of the Wallins Creek Collieries Company, employed at mine A of the Collieries Company, and Ward and a number of other employees of the Collieries Company employed at mine B, sued the Collieries Company for a claimed breach of contract. Marshall and his coemployees were joined as parties plaintiff in their suit, and Ward and his coemployees were joined as parties plaintiff in their suit. A judgment was entered in each suit for the plaintiffs, but the judgment in each suit was several, and not joint. The Collieries Company undertook to appeal to this court from those judgments under an order granting them such appeal by the lower court. In each suit the Collieries Company executed a supersedeas bond before the clerk of the circuit court, pursuant to section 748 of the Civil Code, with the present appellant, Maryland Casualty Company, as surety. The

appeals of the Collieries Company were dismissed by this court in the opinion referred to, because of the fact that, although the judgments, when added together in each case, were far in excess of $500, there was no one judgment in either case in favor of any employee for as much as that sum, and therefore this court had no jurisdiction of the appeal granted by the lower court. The reasons for that position of this court are fully set out in the opinion referred to.

In the meantime the Collieries Company was reorganized. These suits were then brought on the supersedeas bonds referred to, one by Marshall and his coplaintiffs, and the other by Ward and his coplaintiffs, to recover the judgments awarded them in the earlier suits. The lower court granted them the relief they sought, and from the joint judgment in favor of all the plaintiffs, entered in each of these suits, these two appeals are prosecuted.

The appellant insists that the appellees are not entitled to a recovery, first, because the supersedeas bonds sued upon were void as statutory bonds, in that, as the lower court had no jurisdiction to grant the appeals it did in the earlier suits, its clerk was without authority to take the bonds in question. It must be admitted that some of the earlier opinions of this court are not harmonious on this question. For instance, the case of Montgomery v. Montgomery, 117 Ky. 761, 78 S. W. 465, 80 S. W. 1108, 25 Ky. Law Rep. 2018, in effect held that, where this court has no jurisdiction of the appeal granted by the lower court, the supersedeas bond executed before the clerk of the lower court is void as a statutory bond. On the other hand, the cases of American Accident Co. v. Slaughter, 101 Ky. 269, 40 S. W. 675, 19 Ky. Law Rep 418, and Nelson County v. City of Bardstown, 123 Ky. 836, 97 S. W. 765, 30 Ky Law Rep. 408, seem to hold that, under such circumstances, it is a good statutory bond. But, be that as it may, this question among others has been definitely settled by us in the recent case of Wermeling v. Wermeling, 224 Ky. 107, 5 S. W. (2d) 893, which holds that a supersedeas bond executed before a circuit clerk, upon an order of the circuit court granting an appeal, which is void because such circuit court had no jurisdiction to grant such an appeal, is a nullity and may be disregarded. It therefore follows that the appellant is correct in its contention that the bonds in these cases were not valid statutory bonds.

It does not follow, however, that, as these bonds do not have the quality of statutory bonds, they are not good as common-law obligations and enforceable as such. In the case of Cotton's Guardian v. Wolf, 14 Bush, 238, we said that a bond, although not good as a statutory bond, would be good as a common-law obligation if it were entered into voluntarily, for a valid consideration, and was not repugnant to the letter or policy of the law. Tested by these characteristics, the bonds involved in these cases were good common-law obligations. They were entered into voluntarily, as the Collieries Company and the Maryland Casualty Company had the options of paying the judgments against the Collieries Company, of permitting their enforcement through the processes of the court, of taking the chance that the plaintiffs would not undertake to enforce them until this court had passed upon them, or of attempting to stay them by the execution of the bonds, and it chose the latter alternative.

There was nothing repugnant to the letter or policy of the law in these bonds, as was the case in Florrance, Adm'r, v. Goodin & Thomas, 5 B. Mon. 111, and Pacific Nat. Bank v. Mixter, 124 U. S. 721, 8 S. Ct. 718, 31 L. Ed. 567. In the latter case, an attachment bond was held not good, even as a common-law obligation; but this was because the federal statute expressly prohibited the issuance of an attachment against a national bank until after the rendition of a final judgment, which had not occurred in that case. In the Florrance case, an execution was issued on a void judgment and the officers were about to seize the property of the execution debtor when he executed the replevin bond in question. The court said that, as the judgments were void, the officers had no right to seize the property under the void executions, and to hold the replevin bonds good common-law obligations would be against public policy, for otherwise it would tend to encourage in the officers of the law the exercise of illegal power. In the instant cases, the judgments superseded were not void. Their enforcement would not have been illegal. There was no statute or public policy forbidding their enforcement, at least in the absence of a supersedeas. To hold the bonds which were executed good as common-law bonds does not encourage any officer in the exercise of illegal power, and so the Florrance case is not controlling.

We now come to the only troublesome question concerning the validity of these bonds as common-law obli-

gations, and that is the question of consideration. It is argued that, inasmuch as these bonds were not bilateral in their promises, and inasmuch as the present appellees could have enforced the judgments appealed from at any time, since the bonds, being of no validity as statutory bonds, did not work the statutory effect of forcibly staying the execution of the judgments, therefore the Collieries Company and the appellant received no consideration for their undertaking expressed in these bonds. The cases of Stephens v. Miller, 80 Ky. 47, and Hardwick Woolen Mills v. Ball Brothers, 223 Ky. 185, 3 S. W. (2d) 175, are in direct conflict with this contention of the appellant. In the Stephens case an appeal was taken from a judgment of the justice of the peace to the quarterly court of Warren county and an appeal bond executed. Under the statute the quarterly court of Warren county had no jurisdiction of such an appeal. Despite this fact, judgment was rendered against the appellant in the quarterly court. Suit was then brought on the appeal bond, and it was then insisted that, as the quarterly court had no jurisdiction of the appeal, the appeal bond sued upon was void. It was held, however, that the appeal bond was good as a common-law obligation, and that it was supported by valuable consideration, in that those who executed the appeal bond *had secured all that they had sought by the execution of the bond.* In the Hardwick Woolen Mills case replevin bonds were executed to stay certain executions which had been issued on judgments. These replevin bonds were void as statutory bonds, in that they postponed the payment of the judgments for six months, instead of three, as the statute requires. Being void as statutory bonds, they did not serve to discharge the executions, or to prevent the issual of alias executions. As a matter of fact, the obligees did refrain from enforcing their judgments for the six months, and it was held that the obligors in the bonds were bound by them. In the course of the opinion we said:

"The appellants had no executions issued on the judgments, and their forbearance constituted a good consideration. The bonds, therefore, are not statutory bonds upon which executions may be issued and enforced, but they are good common-law obligations."

While these cases are conclusive of appellant's position, we will in deference to its earnest argument re-examine the question on principle. Analyzed, the bonds here involved were undertakings that the obligors would pay to the obligees all costs and damages that should be adjudged against the obligors on the appeals, and that they would satisfy and perform the judgments appealed from if they should be affirmed, and any judgment or order which the Court of Appeals might render or order to be rendered by the inferior court, not exceeding in amount or value the original judgments. The consideration for this undertaking which the Collieries Company and its surety sought and expected by the execution of these bonds was the stay of the execution of the judgments in question. Although not obliged to do so, since the bonds were not good as statutory bonds, yet as a matter of fact the appellees, relying upon the undertaking of the Collieries Company and the appellant, did forbear to enforce their judgments, and so the obligors by reason of their promise did in fact secure the stay of execution which they sought.

We thus have presented this question: Will an undertaking, unenforceable at its outset, because of a lack of any consideration then moving towards the purported obligor, become binding upon the obligor, after the obligee, in reliance upon the undertaking, has, although not bound to do so, actually executed the consideration sought by the obligor? Under elementary principles of the law of contracts, the answer must be in the affirmative. We have here a unilateral contract, defined in section 13 of Williston on Contracts as one where only one party promises performance, the consideration from the promisee being actually given. Illustrating such contracts, the author says:

"An offer of reward, an offer of a price for goods, or for services, becomes a contract when what is requested is given or done, though no obligation to give or to do anything ever exists."

In section 102 of the same work, the author, in discussing the question of valid consideration in unilateral contracts, says:

"The requirement ordinarily stated for the sufficiency of consideration to support a promise is, in substance, a detriment incurred by the

promisee or a benefit received by the promisor at
the request of the promisor. For unilateral con-
tracts, which were the earliest recognized by the
law and may still be regarded as the typical form,
the statement is as accurate as a brief general state-
ment can be. For bilateral contracts it will be found
that some modification of statement is necessary;
though in substance the fundamental requirements
are the same. That a detriment suffered by the
promisee at the promisor's request is sufficient,
though the promisor is not benefited is well settled.
It will be found that in most cases where there is a
detriment to the promisee there will also be a benefit
to the promisor, because when the promisee does
something detrimental to himself at the request of
the promisor, the promisor must be assumed to make
the request because he desired the performance in
question and regarded it as beneficial to himself. It
is true there may not be always such a quid pro quo
as was necessary in the early law to create a debt;
but though the historical derivation of benefit as
part of the definition of consideration may be from
the quid pro quo in the action of debt, this derivation
has so far been lost sight of that at the present
time benefit would doubtless receive a wider mean-
ing. But, as has been said, detriment to the
promisee is enough without benefit to the promisor.''

It is the fundamental principle thus stated in the
foregoing excerpts, which, applied to the question as ac-
tually presented in the cases before us, supports the fol-
lowing text taken from 4 C. J. 1263:

"Many cases hold, however, that whenever the
intended purpose of the bond has been effected by
the obligees reliance upon it and the contemplated
benefits have been actually enjoyed by the obligors,
this is a sufficient consideration to support it as a
common-law obligation as where it has in fact been a
delay of execution or other stay of proceedings.''

To this text is appended a note collecting the
authorities supporting it. Among them is the well-con-
sidered case of Stevenson v. Morgan, 67 Neb. 207, 93 N.
W. 180, 108 Am. St. Rep. 629. In this case may be found
an analysis of many of the cases relied upon by the
appellant herein, and how they may be distinguished,

and, if not, how they are unsound in principle. In Braithwaite v. Jordan, 5 N. D. 196, 65 N. W. 701, 31 L. R. A. 238, in discussing this question, the court said:

"It is urged that the respondent could not have been compelled to refrain from enforcing his judgment pending the appeal, but we are decidedly of the opinion that he would have been promptly restrained, upon motion, it being shown that this bond had been given to secure him. But it would not be decisive of the question, if we should hold that he need not have abstained from proceeding under the judgment pending the appeal. The fact is that he did so abstain."

In Wing v. Rogers, 138 N. Y. 361, 34 N. E. 194, it is said:

"When an action is brought against sureties upon a bond or undertaking given in an action, or upon appeal, the validity and force of the instrument depends upon its efficacy in performing the office or accomplishing the end or result contemplated by the parties at the time it was given."

And Judge Elliott, in his work on Appellate Procedure, sec. 357, says:

"Weight is attached —just as we believe— by the better considered cases, to the fact that the bond has yielded the principal obligor beneficial consideration."

Thus we see that, on principle and under the cases which the text-writers refer to as the better considered ones, the cases of Stephens v. Miller, 80 Ky. 47, and Hardwick Woolen Mills v. Ball Brothers, 223 Ky. 185, 3 S. W. (2d) 175, were correctly decided, and the fact that the appellees did stay the executions on their judgments in reliance upon the undertaking of the obligors in the supersedeas bonds furnished the consideration necessary to make such undertaking a binding obligation upon such obligors. The case of Roberts v. Jenkins, 80 Ky. 666, cited by appellant, is not in conflict with these views, because there the judgment which was superseded did not give the appellees the rights which they sought to make effective by their suits on the supersedeas bonds. We are therefore of opinion that the

bonds here involved were good common-law obligations and supported by sufficient consideration.

However, even if this be so, appellant contends that there has been no breach of its obligation, since it undertook to pay the judgments in question only if they were affirmed by this court, and the dismissal of the appeals by this court for want of jurisdiction is not an affirmance of those judgments. In the case of Harrison v. Bank of Kentucky, 3 J. J. Marsh. 375, an appeal was dismissed for want of prosecution. Suit was then brought on the supersedeas bond, and the defense was made that the dismissal of the appeal did not amount to an affirmance, and hence there was no breach of the obligation under the bond. In disallowing that contention, we said:

> "According to a rigidly literal construction of the language employed in the condition, some doubt might be entertained as to the first point; but it is clear, that such a construction would defeat the main object of the law, in requiring the execution of an appeal bond. Were it indulged in, no case of suit, on such bond, where, in taking it, the words of the act on that subject, had been pursued, could a recovery be effected, if the obligors therein thought proper to defeat it. . . .

> "The main, if not the only object in requiring an appeal bond, is to secure to the plaintiff in the judgment, the payment of such judgment, with costs and damages, when awarded, unless it should be reversed by the appellate court; and to attain that object, such must be considered to be its legal effect, in every case, where it has been executed in the words of the act, or in other words substantially the same. In such cases we must remember that, 'qui haeret in litera, haeret in cortice;' we must regard substance and not form, or the law will have been in vain; and under that view of it, the dismission must be considered as a virtual affirmance of the judgment. A different interpretation of the law would lead to fraud and injustice, subjecting creditors, in many instances, to the entire loss of their debts. Appeals would be taken without an expectation of successful prosecution, by principals, and the bonds entered into by sureties, without the fear of responsibility."

This Harrison case was followed with approval in the case of Illinois Surety Co. v. Hendrick et al., 170 Ky. 347, 185 S. W. 1125, which also cited the cognate cases of Pugh's Adm'r v. White, 78 Ky. 210, and Alexander v. Gish, 88 Ky. 19, 9 S. W. 801.

Conceding the effect of these decisions, the appellant undertakes to distinguish them on the ground that the dismissals of the appeals there involved occurred in cases of which this court had jurisdiction, whereas the dismissals in the instant cases occurred because this court had no jurisdiction of them. The cases from some of our sister states, which appellant cites, do make a distinction between the two characters of dismissal, but in the light of the language quoted from the Harrison case we do not think any common-sense distinction can be made. As the court there said, the main object of the bond is to procure a stay of execution of the judgment until it can be reversed, for which reason the obligors bind themselves to pay the judgment unless it should be reversed, "and, to attain that object, such must be considered . . . its legal effects." It matters not whether appellant did not procure such a reversal for lack of diligence in prosecuting the appeal or for lack of success in such prosecution because the court had no jurisdiction of the appeal. It wanted to test the question of the court's jurisdiction, and, pending that test, to stay the execution of the judgment. It argued the question of the court's jurisdiction ably and vigorously, and stayed the execution of the judgment until it got the court's answer to its contention. The dismissal for want of jurisdiction left the appellant in exactly the same position as a dismissal for want of prosecution. The effect of such dismissal on its obligation under its appeal bond does not turn on the jurisdiction or lack of jurisdiction of this court to consider the appeal, but on the fact, as we said in the Harrison case, that the real undertaking of the obligors in the appeal bond is that they will pay the judgment unless they procure a reversal. This they have not done, and so the dismissal of the appeals in this case works the same effect on appellant's undertaking on the appeal bonds here involved as an affirmance would.

Some question is finally made about whether the judgments appealed from herein were entered in term time or not, but we have examined the record and find no error in this connection.

For the reasons herein set out, the judgments in each of the cases set out in the caption of this opinion are affirmed.

Whole court sitting.