261 F.2d 143
 COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant,
v.
Ed H. WATSON, Roger Rasmussen, Samuel Ruiz, D.D.S., Juana
Ruiz, M.D., George H. L. Kuper, European Motor
Import Company, Inc., a corporation, and
Joseph R. Ferreri, Appellees.
 No. 5842.
 United States Court of Appeals Tenth Circuit.
 Oct. 31, 1958.
 
 Leslie D. Ringer, Santa Fe, N.M., for appellant.
 Frank B. Zinn, Santa Fe, N.M. (Dean S. Zinn, Santa Fe, N.M., on the brief), for appellee Ed H. Watson.
 Joseph A. Sommer, Santa Fe, N.M., for appellees Samuel Ruiz, D.D.S., and Juana Ruiz, M.D.
 William W. Gilbert, Santa Fe, N.M., for appellee European Motor Import Co.
 Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.
 MURRAH, Circuit Judge.
 
 
 1
 The appellant, Commercial Insurance Company, issued its statutory motor vehicle dealer's bond in the penal sum of $5,000 to one Donald E. Powell to comply with the New Mexico statute for a license to engage in the automobile business in Santa Fe, New Mexico. The bond was conditioned that Powell '* * * shall conduct his business as a dealer * * * of vehicles without fraud or fraudulent representation, and that said applicant shall pay losses, damages and expenses that may be sustained by the purchaser by reason of the failure of title to a motor vehicle * * * sold by such dealer * * *.' When these three appellees filed claims against the bond growing out of Powell's alleged fraudulent transactions, the appellant brought this action against the appellees in the nature of an interpleader for an adjudication of nonliability. Each of the separate claims stands on its own footing and each is for less than the general jurisdictional amount. But federal jurisdiction is sustained under the interpleader statute. 28 U.S.C.A. 1335. They were submitted to the court on facts which, for the most part, were stipulated, pursuant to which the court gave judgment for each claimant for the agreed amount of the claim, plus interest from the date of demand and attorney fees, all to be apportioned to the limits of the bonded liability.
 
 
 2
 European Motor Import Company.
 
 
 3
 Import was a wholesale dealer in foreign automobiles. Powell represented to Import's Manager that he had a sale for a Volkswagen and induced Import to give him possession of it and to deposit the title papers in the Los Alamos branch of a Santa Fe Bank with a sight draft for the purchase price in the sum of $1,625. The title papers so deposited consisted of an assignment from the original nonresident owner by power of attorney to Import's Manager, and a 'reassignment of title by registered dealer' from Import to Powell's Downtown Auto Sales at Santa Fe. When the sight draft was not paid, Powell instructed Import to draw another draft for the amount of the purchase price, with title attached, on another bank where he usually did business, and through which he would 'floor-plan' the car. Import finally instructed the bank to release title to Powell without payment of the draft, but to return the attached power of attorney. In a subsequent telephone conversation, Import complained of nonreceipt of payment and Powell professed not to understand why payment had not been made by the bank, and said that he would go to the bank and see what was up. Several days later, Powell sold the automobile and delivered the certificate of title and a bill of sale. Powell died shortly thereafter without having ever paid Import for the purchase price of the automobile. When the purchaser of the automobile from Powell was unable to secure transfer of title because of the absence of the power of attorney from the original owner, Import then delivered the power of attorney to clear the title and took an assignment of the purchaser's claim against Powell.
 
 
 4
 The appellant seeks to avoid liability to Import on the ground that the bond was intended only for the protection of a purchaser of an automobile from the bonded dealer, and not a seller such as Import. Invoking the doctrine of ejusdem generis in the interpretation of the statutory bond, the argument is that the broad statutory provision that a bonded dealer 'shall conduct his business * * * without fraud or fraudulent representations' should be construed in accordance with the more narrow and specific following provision, 'and shall pay all losses * * * that may be sustained by any purchaser of a vehicle.' The doctrine of ejusdem generis, as applied in New Mexico and elsewhere, is to the effect that 'general words in a statute, which follow a designation or enumeration of particular subjects, objects, things, or classes of persons, will ordinarily be presumed to be restricted so as to embrace only subjects, objects, things, or classes of the same general character, sort or kind, to the exclusion of all others.' Grafe v. Delgado, 30 N.M. 150, 228 P. 601, 602. See also Sandack v. Tamme, 1 Cir., 182 F.2d 759.
 
 
 5
 Here, however, the general words of the statute precede rather than follow the specific. But in any event, the canon is only an aid in the resolution of ambiguity, and we do not think that the condition in the bond that a dealer shall conduct his business without fraud or fraudulent representations needs any amplification or interpretation, and this even though it is followed by the requirement to pay all losses that may be sustained by the purchaser of a vehicle. If aid be needed, we need only resort to the predecessor statute which read, 'for the use and benefit of the purchaser and his vendees.' N.M.S.A.1941, 68-138. See also 1937 N.M.S.L. Chap. 137, p. 392. Our later statute, 1953 Comp. 64-8-6, is clearly an enlargement for the benefit of any one injured by the dealer's fraudulent conduct of his business, and also for the benefit of any purchaser injured by failure of title. This is the construction placed upon a similar statute by the Utah Supreme Court in Lawrence v. Ward, 5 Utah 2d 257, 300 P.2d 619.
 
 
 6
 The appellant also challenges the sufficiency of the evidence to prove fraudulent conduct by the requisite clear and convincing evidence, especially since the person to whom the fraud is attributable is dead. And see Pacific Royalty Co. v. Williams, 1 Cir., 227 F.2d 49, 55. But we think Powell's actions in obtaining possession of the automobile and then title for the ostensible purpose of 'floor-planning' the car at a bank, when considered in the light of his later professions not to know why payment had not been made by the bank, though he had not negotiated the agreed financing, certainly indicate an intent to defraud his seller. Indeed, it was quite sufficient to justify the court's finding of fraudulent conduct.
 
 The Ruiz Claim
 
 7
 In this claim, Powell obtained possession of a Cadillac automobile from Dr. Ruiz at his office on January 16, 1957. He then went to the Ruiz home and obtained the certificate of title in blank from Mrs. Ruiz on the representation that he needed it to show it to the bank to arrange for the financing of a prospective sale. After repeated attempts to repossess the automobile, and on January 22, 1957, Powell acknowledge receipt of the title to the Cadillac in writing in payment of a Volkswagen, to be delivered not later than March 5, at which time Ruiz agreed to pay an additional $225. Powell represented that he had ordered the Volkswagen and that it had arrived in El Paso. The Volkswagen was never delivered, but on February 13, 1957, Powell hypothecated the title to the Cadillac for $1,417 without the knowledge or authority of the Ruizes and without benefit to them. In order to clear the title, it was necessary for them to pay the amount of the bank's loan to Powell, plus other expenses in an agreed amount.
 
 
 8
 Appellant bonding company denies liability under its policy on the ground that it was not in force when possession and title to the car were fraudulently taken on January 16, 1957. The surety bond was issued on the following January 21, and of course the bond would not be retroactive for frauds perpetrated prior to its effective date. But, though the fraud might have been conceived prior to the issuance of the bond, it was not consummated until after the title to the automobile was hypothecated to the bank and Powell received the proceeds of the loan some time after the effective date of the bond. This case is unlike Massachusetts Bonding & Ins. Co. v. Bank of Aurora, Colo., 238 P.2d 872, where the defalcation was complete prior to the effective date of the bond.
 
 
 9
 The Watson Claim.
 
 
 10
 Watson delivered to Powell a car with clear title and a sum of money under a written agreement for a station wagon. The station wagon was delivered without title on Powell's representation that title would be forthcoming. Watson kept the car without title until demand was made for its return by the title owners. Watson lost the value of his car in the agreed sum of $1,400 and $1,095 in cash, plus other expenses and attorney fees.
 
 
 11
 The bonding company does not contend that the transaction was not fraudulent and within the coverage of the policy, but denies liability solely on the ground that since Watson did not apply to the Motor Vehicle Department of the State of New Mexico for a title within the time fixed by statute (N.M.S.A.1953, 64-4-1, 64-4-3, 64-10-7), he is guilty of a violation of a law, a wrong which makes him in pari delicto with Powell and therefore without standing to maintain this suit. The contention is based upon the well settled rule of law that a person cannot maintain an action if, in order to establish it, he must rely wholly or in part upon some illegal or immoral act of his own. Desmet v. Sublett, 54 N.M. 355, 225 P.2d 141; 1 C.J.S. Actions 13, page 996. It is of course akin to the clean hands doctrine.
 
 
 12
 The short answer is that neither equity nor the law requires its suitors to be wholly blameless. Watson was precluded from applying for transfer of title because Powell had never given him one, during all of which time he was endeavoring to complete the transaction. His wrong, if any, certainly was not in pari delicto with Powell's fraud, and it constitutes no defense to the claim.
 
 
 13
 The appellant complains of the allowance of attorney fees in each of the claims as unauthorized and improper. But since the actual damages, exclusive of attorney fees and even interest, exceeded the limits of the $5,000 bond, we have no occasion to consider the propriety of the court's allowance of attorney fees.
 
 
 14
 The defendants Rasmussen and Kuper filed disclaimers in the trial court. Apparently by oversight, the judgment below did not order that these defendants take nothing from the appellant. The judgment should be amended in this regard, and in all other respects it is affirmed.