2003-NMCA-018

62 P.3d 297

Mukta Kaur KHALSA, Petitioner–
Appellant,

v.

Richard Lee LEVINSON, Respondent–
Appellee,

and

St. Paul Surety Company,
Intervenor–Appellee.

No. 22,389.

Court of Appeals of New Mexico.

Sept. 23, 2002.

Thomas Patrick Whelan, Jr. Santa Fe, NM, for Appellant.

Kathryn M. Wissel, Robert D. Levy, Geer, Wissel & Levy, P.A., Albuquerque, NM, for Respondent–Appellee.

Ann Maloney Conway, Cynthia A. Braun, Huffaker & Conway, P.C., Albuquerque, NM, for Intervenor–Appellee.

## OPINION

BUSTAMANTE, Judge.

{1} In this divorce case we decide whether a supersedeas bond survived our dismissal of a previous appeal by Respondent (Husband). In his previous appeal, Husband appealed a 1996 order requiring him, among other things, to pay Petitioner interim attorney's fees and costs in the amount of $30,263.86. *See Khalsa v. Levinson*, 1998–NMCA–110, 125 N.M. 680, 964 P.2d 844 (*Khalsa I* ). Husband posted a supersedeas bond to stay execution of the order while the case was on appeal. In 1998 we dismissed Husband's appeal for lack of finality, and remanded the case to district court. *See id.* In the district court, the surety, St. Paul Surety Company (Surety), moved to release the bond. The court granted Surety's motion, reasoning that once the appeal was dismissed, the bond was no longer in place. Husband has never paid the attorney's fees and costs under the 1996 order. Petitioner (Wife) appeals. Concluding that under its own language the bond remained in place if the appeal was dismissed, we reverse. The bond should not have been released, and Wife is entitled to judgment against the Surety.

## BACKGROUND

{2} On December 3, 1996, the court entered an order requiring Husband to pay Wife's attorney's fees and costs totaling $30,263.86. The order, which we discussed in *Khalsa I,* also covered other matters. Husband appealed the 1996 order, but did not seek to post a bond until more than sixty days after the notice of appeal was filed. *See*

NMSA 1978, § 39–3–22(A) (1966) (stating that there is no stay of execution after an appeal of a final order has been filed unless a supersedeas bond, in double the amount of the judgment, is filed within sixty days of the judgment or decision) and § 39–3–22(D) (allowing supersedeas in appeals of interlocutory orders but placing a thirty day period from the date of entry of the order for filing the bond). Absent supersedeas, Wife could have immediately enforced the order. *See Hall v. Hall,* 114 N.M. 378, 386–88, 838 P.2d 995, 1003–05 (Ct.App.1992) (upholding trial court's finding of contempt against husband who failed to comply with court orders). Wife, however, agreed to allow Husband to post a late bond, thus foregoing her right to immediately enforce the order. Husband posted a bond in the amount of $60,567.72, and the bond was approved by the court on March 7, 1997.

{3} Husband conceded below that, if not for the bond, the order was enforceable. Husband was not entitled to ignore the court's order, whether it was final or not, and recognized as much when he posted the supersedeas bond to avoid complying with the order. Wife represents that, if not for the appeal and the bond, Wife could have taken steps to garnish Husband's wages. Wife had apparently begun preparations to do so. However, because the bond was in place and acted—or was treated by the parties—as a stay of execution, Wife did not attempt to enforce the order and took no further steps to execute on it.

{4} Although it is not entirely clear from the record, at some point after the bond was posted, Husband moved out of the country, and now lives in Ireland. Wife states, and Surety does not dispute, that it would be very difficult to enforce the order against Husband at this point.

{5} After we dismissed Husband's appeal in *Khalsa I,* and issued our mandate on August 25, 1998, Wife took steps to enforce the order against Husband and Surety. On January 29, 1999, Wife obtained a judgment on the mandate, which once again ordered Husband to pay the attorney's fees and costs ordered in the 1996 order. Subsequently, Wife sought to enforce the judgment, and

obtained judgment against Husband and Surety on November 8, 2000. Permitted to intervene, Surety moved to set aside the November 8th order and to release the bond. This resulted in an Amended Judgment and Order, entered on December 29, 2000, in which the court granted Surety's request to set aside the judgment against it, but postponed a decision on whether the bond should be released. The district court eventually granted Surety's request to release the bond on April 16, 2001. Wife's request for reconsideration of the order was denied, and Wife now brings this appeal.

## DISCUSSION

### A. Standard of Review

{6} A supersedeas bond is a contract. *See* 74 Am. Jur.2d *Suretyship* § 1 (2001) (hereinafter *Suretyship* ); *Bateman v. Kennecott Copper Corp.,* 80 N.M. 778, 779, 461 P.2d 911, 912 (1969) (stating that "[l]iability under a supersedeas bond is strictly determined by the express terms of the contract of undertaking"); *cf. State v. Ericksons,* 106 N.M. 567, 567, 746 P.2d 1099, 1099 (1987) (noting that a bail bond is a contract). Interpretation of the bond and whether the Surety is bound are questions of law which we review de novo. *Cf. Rummel v. Lexington Ins. Co.,* 1997–NMSC–041, ¶ 60, 123 N.M. 752, 945 P.2d 970 (stating that the interpretation of an insurance contract is a matter of law reviewed de novo). Where, as here, resolution of the issue involves only the interpretation of documentary evidence, we are in as good a position as the trial court to interpret the contract, and need not defer to the trial court. *Kirkpatrick v. Introspect Healthcare Corp.,* 114 N.M. 706, 711, 845 P.2d 800, 805 (1992).

### B. The Bond

{7} Section 39–3–22 describes how execution of judgments in civil actions may be stayed pending appeal. Rule 1–062 NMRA 2002 also provides for a stay on appeal by posting a supersedeas bond. The term "supersedeas" is synonymous with a stay of proceedings, stay of execution, or simply a stay. *See Quintana v. Knowles,* 113 N.M. 382, 382, 827 P.2d 97, 97 (1992). Supersedeas is designed to protect the appellee

against loss and to maintain the status quo during the pendency of the appeal. *See id.* at 382–83, 827 P.2d at 97–98; *Hart v. Employers' Liab. Assurance Corp.,* 38 N.M. 83, 85, 28 P.2d 517, 518 (1933).

{8} The bond in this case recognizes that Husband appealed "the Order in this matter issued December 3, 1996, awarding attorneys fees and costs in favor of [Wife]," and that the amount of the bond is sufficient to satisfy the requirements of Section 39–3–22. After stating that it was bonding the December 3rd order "on the part of [Husband]," the bond states:

> that if said judgment appealed from, or any part thereof, be affirmed as to said Appellant *or the appeal be dismissed as to said Appellant, and Appellant ordered to pay the judgment,* or any part of such judgment as to which the same shall be affirmed as to said Appellant, and any or all damages and costs which may be awarded against said Appellant upon the appeal, and if said Appellant does not make such payment within 30 days after the filing of the remittitur from the court from which the final appeal is taken, judgment may be entered [against the surety].

(Emphasis added.)

{9} If we had considered Husband's appeal in *Khalsa I* on the merits, and affirmed the order, there would be no question that the bond would be available to Wife. However, we dismissed the appeal for lack of finality and did not address the merits. Thus, we must decide whether the bond is available to Wife after such a dismissal.

## 1. Interpretation of Bonds

{10} We start with general propositions concerning bonds and their interpretation. Sureties should not be excused except for the best of reasons, and a liberal construction should be indulged against them. *See Burroughs v. U.S. Fid. & Guar. Co.,* 74 N.M. 618, 622, 397 P.2d 10, 13 (1964), *overruled on other grounds by Quintana,* 113 N.M. at 387, 827 P.2d at 102; *see also State v. Roy,* 41 N.M. 308, 316, 68 P.2d 162, 167 (1937) (stating the rule that bonds are construed most strongly against the party preparing them). However, this rule of construction cannot be invoked to add provisions into the undertaking to which the surety has not subscribed. *See Burroughs,* 74 N.M. at 622, 397 P.2d at 13. Of course bonds must be considered in light of applicable statutes and rules of procedure. *See id.* at 623, 397 P.2d at 13. Additionally, there are different approaches in interpreting supersedeas bonds depending on whether the surety is compensated or not. Here, Surety is compensated and, therefore, if the bond is susceptible of different meanings, the bond is construed against the Surety. *Monte Rico Milling & Mining Co. v. U.S. Fid. & Guar. Co.,* 35 N.M. 616, 625, 5 P.2d 195, 199 (1930) (stating that in the case of a paid surety any ambiguity will be more strictly construed against the surety and in favor of the obligee in order to give full effect to the purpose of the undertaking); SURETYSHIP, *supra* at § 22.

## 2. The Meaning of "Affirmance"

{11} Surety makes several arguments why, under the language of the bond, no events triggering liability occurred. Surety relies on the bond language requiring that the "judgment appealed from ... be affirmed as to said Appellant or the appeal be dismissed as to said Appellant" to include a condition that the appellate decision be on the merits. Surety argues that our dismissal in *Khalsa I* was not on the merits and, thus, did not result in affirmance within the meaning of the bond.

{12} We disagree with Surety's interpretation of the bond. First, the language of the bond is not so narrow as Surety argues. The bond is payable if the judgment is "affirmed" *or* "dismissed." If the bond were payable only on affirmance, Surety's argument would have more weight. The notion of affirmance normally includes a decision for and against parties based on the merits. The concept of dismissal is, however, not generally so narrow. To accept Surety's interpretation of the bond would merge the meaning of "affirm" and "dismiss," essentially deleting large portions of the concept of dismissal out of the bond. We see no reason flowing from the bond or our law to do so.

{13} Appellate courts dismiss appeals without reaching the merits for a number of reasons. For example, we dismiss cases because, as in *Khalsa I* there is no final, appealable order; because a notice of appeal is filed late; because the parties voluntarily agree to dismiss an appeal under Rule 12–401 NMRA 2002; and as a sanction, *see* Rule 12–312(D) NMRA 2002. None of these dismissals results in affirmance on the merits, although in several instances the practical result is the same. In any event, the reason for a dismissal is not so important as its effect. Here, the effect was to leave the stayed December 3, 1996, order in place. In this context, the critical fact is not that Wife did not win affirmance on the merits; it is that Husband did not succeed in his efforts to overturn the order. And, the money he was ordered to pay almost six years ago is still due and owing. In fact, the trial court entered judgment on the mandate issued in *Khalsa I,* stating that, "This Court's December 3, 1996 Order ... is a valid, enforceable interim order."

{14} In support of its argument that a surety becomes liable only after a "decision on the merits of an appeal," Surety relies on several cases from other jurisdictions. *See Am. Bible Soc'y v. Blount,* 446 F.2d 588, 594–95 & n. 12 (3d Cir.1971); *Janssen v. Shown,* 53 F.2d 608, 609–12 (9th Cir.1931); *Meeker v. Stuart,* 188 F.Supp. 272, 276 (D.D.C.1960), *aff'd,* 289 F.2d 902 (D.C.Cir.1961); *Alabama Mills v. Mitchell,* 159 F.Supp. 637, 639 (D.D.C.1958). These cases all deal with injunction bonds and, at most, state the proposition that an injunction bond is not payable until there is a final judgment in favor of the party enjoined. This proposition is not directly relevant here. The rule in the injunction bond case approach flows from the nature of preliminary injunctive relief. As the court in *American Bible Society* noted:

> The requirement of security is rooted in the belief that a defendant deserves protection against a court order granted without the full deliberation a trial offers. That protection consists of a promise that the defendant will be reimbursed for losses suffered if it turns out that the order issued was erroneous in the sense that it

would not have been issued if there had been the opportunity for full deliberation.

> The propriety of the issuance of preliminary injunctions on the abbreviated records on which they are based does not establish plaintiffs' rights to injunctions after final hearings.

*Id.* at n. 12. In contrast, here we have a bond issued to preserve a status quo which includes suspension of an enforceable order entered after much litigation. The bond preserves against a variety of possibilities, including affirmance or dismissal on appeal.

{15} We are more persuaded by the reasoning in *Maryland Casualty Co. v. Marshall,* 226 Ky. 62, 10 S.W.2d 485 (1928). There, a bond was placed, and the appeal was dismissed for lack of appellate jurisdiction. The surety argued that dismissal did not require it to pay, because it was required to pay only judgments that were affirmed. The court rejected that argument, holding that for purposes of the bond, dismissal was the equivalent of affirmance. *See id.* at 488. The court reasoned that to accept the surety's argument would defeat the purpose of the law in requiring an appellant to post a bond. *See id.* Similarly, failure to enforce the bond in this case would result in an unpaid order even though Husband failed to achieve reversal. We will not countenance such a result.

{16} In addition, the court in *Maryland Casualty Co.* noted that even if the bond there was deemed invalid—or even void—as a *statutory* bond it could still be enforced as a common-law obligation. *Id.* at 486. If the bond was "entered into voluntarily, for a valid consideration, and was not repugnant to the letter or policy of the law" it would be enforced. *Id.* We agree with this common-sense approach to the practical problem of collecting unpaid obligations superseded by commercial sureties. The circumstances here fit all three criteria. Thus, the bond's validity as a common law obligation provides another basis for our decision to reverse.

**3. Effect of Dismissal of the Appeal**

{17} Surety recognizes that liability on the bond is triggered if the "appeal [is] dismissed as [to] Appellant," but argues that this ap-

plies only if he is ordered "to pay any judgment" by the appellate decision. Surety argues that these requirements are not met, because our dismissal in *Khalsa I* did not constitute an order to pay the judgment, nor did we order any damages or costs to be paid.

{18} As a practical matter, when we dismiss cases we do not generally include language requiring any judgment to be paid. Instead, our normal practice is to discuss why dismissal is warranted. It would be unusual for us, in dismissing a case, to expressly state that the appellant is ordered to pay the judgment. Indeed, we can hardly conceive of a situation in which we would dismiss, yet still explicitly order the appellant to pay the judgment. The interpretation of the bond offered by Surety, again, essentially reads the dismissal language out of the bond. We decline to do so. *See Castle v. McKnight*, 116 N.M. 595, 598–99, 866 P.2d 323, 326–27 (1993) (declining to interpret a contract to divest one provision of all "practical meaning"); *Hart*, 38 N.M. at 85, 28 P.2d at 518 (rejecting construction of a bond that would have greatly reduced the protection of the bond).

{19} Nor are we persuaded by Surety's companion argument that the dismissal provision is inapplicable because *we* did not order anything to be paid. Surety relies on the bond's language, "and Appellant ordered to pay the judgment," to argue that Husband was not ordered by us to pay, so this triggering event has not occurred. We disagree with Surety's premise that the dismissal provision applies only if *we* order payment. Rather, the only reasonable interpretation of this language is that if the Appellant does not succeed on appeal in overturning the requirement that he pay money to the Appellee, the bond remains in force. We believe the language is intended to convey the idea that if the Appellant reduces any money judgment to zero, the Surety will not be bound to pay.

{20} We disagree with Surety's argument for another reason. The bond language simply reflects that Husband has been ordered to pay a sum of money by a court. That order has not been overturned. Here, the court's 1996 order requiring payment has remained in force at all times since 1996 (although it was stayed by the bond for approximately two years), and remains a valid obligation now. Husband has never succeeded in getting it overturned. Implicit in our dismissal of Husband's appeal in *Khalsa I* is that Husband was not relieved of his obligation to comply with the 1996 order. We reject Surety's argument that no liability on the bond was triggered because our dismissal did not expressly order Husband to pay anything.

{21} Our interpretation of the bond's language is supported by the applicable statute and rule, and is consistent with the purposes of a supersedeas bond. *See* § 39–3–22; Rule 1–062(D); *Burroughs*, 74 N.M. at 623, 397 P.2d at 13 (stating that the interpretation of the bond must be considered in light of the applicable statutes and rules). A bond is designed to protect the appellee against loss and preserve the status quo while the case is appealed. *See Quintana*, 113 N.M. at 382–83, 827 P.2d at 97–98. Sections 39–3–22(A) and (B) address dismissal, and provide that the bond shall be paid "if the appeal or writ of error is dismissed." Likewise, Rule 1–062(D) provides that the bond "shall be conditioned for the satisfaction of and compliance with the judgment in full together with costs, interest and damages for delay *if for any reason the appeal is dismissed* or if the judgment is affirmed." (Emphasis added.) In short, neither the statute nor the rule make any exceptions for some types of dismissals but not others. In fact, the rule is especially definite, stating that the bond must be available if the appeal is dismissed "for any reason." Both recognize that it is the appellant (and, by extension, the surety) who bears the risk of a dismissal, not the appellee. Our interpretation of the bond is consistent with these requirements.

## 4. Expansion of Surety's Liability

{22} Surety argues that if we rule for Wife, we will be violating the rule that a surety's obligation is not to be expanded beyond the undertaking to which it agreed. The record reflects that since the December 1996 order, the court has twice entered judgment to require Husband to pay the

$30,263.86, once in January 1999, and again in December 2000. Surety says it agreed to pay only the December 1996 order. Surety argues that, if Wife prevails in this appeal, it will be required to pay an amount set by a December 2000 judgment entered two-and-a-half years after the appeal on the 1996 order was dismissed. It relies on cases holding that a surety cannot be held liable on an "entirely new judgment," and argues that requiring it to pay under a different judgment impermissibly expands on its obligations under the bond.

{23} We disagree. A reading of the subsequent judgments entered in 1999 and 2000 establishes that they simply reiterate the 1996 order—that Husband pay the attorney's fees and costs imposed in 1966 that he still had not paid. This is the same obligation, for the same amount of money, that Surety had agreed to pay, and we are not persuaded that the fact that additional judgments imposed that obligation impermissibly expands the Surety's obligation under the bond. *Cf. Beebe v. Fouse*, 27 N.M. 194, 196, 199 P. 364, 365 (1921) (holding that novation did not occur where there was no new contract, and the subsequent agreement constituted an agreement to pay the same debt that existed previously).

## C. Estoppel

{24} We also hold that the record in this case clearly supports a theory of promissory estoppel. The elements of promissory estoppel are a promise which induced the promisee's action or forbearance, the promisee's reliance must have been reasonable, the promisee's action or forbearance must have amounted to a substantial change in position, the promisee's action or forbearance must have been actually foreseen by the promisor when making the promise, and the enforcement of the promise is required to prevent injustice. *See Strata Prod. Co. v. Mercury Exploration Co.*, 121 N.M. 622, 628, 916 P.2d 822, 828 (1996). All of these elements are established here.

{25} Surety argues that any representations are attributable to Husband alone, that there is no evidence Surety made any promises beyond the language in the bond, and therefore estoppel cannot provide a basis for imposing liability against Surety. We reject this argument. By issuing the bond, Surety promised to pay, and Wife relied on that promise and did not take further steps to enforce the order. We also conclude that, in this context, the Surety is bound by the facts that Husband agreed to post a bond so he could stay execution of the order, Husband obtained significant benefits from the stay, Wife agreed to allow the late filing of the bond believing she would be adequately protected by the posting of the bond, and Husband has made enforcement of the order extremely difficult by leaving the country. On this record, Surety may not disclaim liability by attempting to divorce itself from Husband, its principal. *See Bd. of County Comm'rs v. Slaughter*, 49 N.M. 133, 140, 158 P.2d 854, 858 (1944) (Threet, J., specially concurring) (suggesting surety is a silent witness to the conflict, bound by the defense interposed by the principal); *Holland v. Lawless*, 95 N.M. 490, 497, 623 P.2d 1004, 1011 (Ct.App.1981) (stating that "the liability of the surety depends upon the liability of the principal"); SURETYSHIP, *supra* at § 92 (stating that "any act of the principal which estops him from setting up a defense personal to himself operates equally against his surety").

{26} This case demonstrates why a bond is required to protect an appellee, and why that protection must be construed to effect its purposes. Here, it is undisputed that the order was enforceable. It is also undisputed that Husband missed the deadline for filing a bond. Wife could have enforced the order and, with the aid of the court, forced Husband to comply with his obligation to pay. At Husband's request, Wife agreed to allow Husband to file a late bond, believing that she would be adequately protected. Husband took advantage of this situation to appeal and stay execution for a period of years, and then moved out of the country, making it virtually impossible to collect the money he owes under the 1996 order. Surety agreed to post the bond to stay enforcement of an order, knew the appeal involved an order, recognized that dismissal of the appeal was a possible outcome, and should be held to its

agreement. It would be inequitable and ironic for us to leave Wife without the protection of the bond, and to hold that Husband's unsuccessful appeal absolves the Surety of any responsibility. We will not adopt the construction of the bond, offered by Surety, to do so.

### D. The Lack of a Final Judgment

{27} Surety relies on Section 39–3–22(A), *Higgins v. Fuller,* 48 N.M. 215, 217, 148 P.2d 573, 574, (1943) and *Brounty v. Daniels,* 23 Neb. 162, 36 N.W. 463, 464 (1888), to argue that if there is no final judgment, there is nothing to stay, and there is nothing on which a supersedeas bond could operate. Surety argues that because the December 1996 order was not a "final judgment," then "no stay should have been issued, and the Bond was a nullity."

{28} We reject this argument. First, as we have noted, Husband and Wife treated the December 1996 order as an appealable final judgment. Doing so was to Husband's advantage because he wanted to appeal and wanted a stay of execution. It was also to Wife's advantage because it provided her some assurance of payment. Surety accepted this state of affairs, and expressly recognized that it was bonding "the Order in this matter issued December 3, 1996, awarding attorneys fees and costs in favor of [Wife]." The Surety was well aware of the order it was bonding and, if it had concerns about the lack of a final judgment, could have refused to issue the bond or otherwise limited its responsibility and risk. *See* SURETYSHIP, *supra* at § 110 (noting that ordinarily the surety has the duty to make inquiry regarding the risk). For example, Surety could have more carefully defined the type of dismissal that would trigger its liability. It did neither.

{29} Second, the general assertion that interlocutory appeals of nonfinal orders are not subject to supersedeas is wrong. The legislature has specifically addressed interlocutory appeals in Section 39–3–22(D) and has provided that "supersedeas *may* be granted under the provisions of this section[.]" (Emphasis added.) The permissive language of Section 39–3–22(D) implies that

courts should be cautious in superceding interim orders, even if properly appealed. Orders such as interim child support, maintenance, and fees are sensitive and in some circumstances it would be improper to stay them pending appeal. *See Madden v. Madden,* 354 Pa.Super. 300, 511 A.2d 882, 883 (1986) (noting disfavor with allowing supersedeas of pendente lite support orders); *Wilks v. Wilks,* 632 P.2d 759, 760–61 (Okla.1981) (holding that, like child support and alimony orders, attorney fee awards in divorce are not subject to automatic supersedeas upon posting of bond; but rather should be superseded only on special grant of a court). This issue is not directly before us since both parties agreed to stay the attorney's fees and cost order. Thus, we leave the issue of the limits of discretion in granting such stay to another day. All we need acknowledge to meet Husband's argument is that stay of interlocutory, nonfinal orders is possible in New Mexico. This aspect of New Mexico law also makes *Brounty* not applicable here. Thus, we reject Surety's argument that the bond was void for lack of a final, appealable judgment.

{30} Third, the bond was supported by consideration. Surety received its premium. Husband benefitted by the bond, because he was allowed to appeal and was not required to pay the attorney's fees at that time. In exchange, Wife agreed not to execute on the order. This forbearance from collection by Wife provided sufficient consideration to support, as noted above, a common law obligation enforceable as such. *See Stevenson v. Morgan,* 67 Neb. 207, 93 N.W. 180, 182 (1903) (recognizing validity of bond in absence of statutory authority where appellee "accepted and enjoyed" benefits of bond). Under these circumstances, it would be inequitable to deem the bond void. *See Hart,* 38 N.M. at 87, 28 P.2d at 519 ("The principals have had the stay they bargained for. The obligees have suffered the damages which the stay made inevitable. We know of no sound reason for relieving the surety.").

{31} Finally, *Higgins* is simply a different case. In *Higgins,* the *appellee* argued that the appeal should be dismissed because appellant had not posted a bond which appellee argued was a statutory prerequisite to main-

taining the appeal. The statute in question required bond for appeal of any "judgment or decree of any district court involving the title to or possession of real or personal property." *Higgins,* 48 N.M. at 216, 148 P.2d 573 (internal quotations and citation omitted). In *Higgins,* appellant alleged ownership of real property which at all times was in the possession of appellee. Appellant lost and was still out of possession. Our Supreme Court held that in this situation, there was no reason for a supersedeas bond because there was nothing in the judgment upon which execution could be had or which could change the status quo. Thus, the case turned on whether there was anything to supercede, not on any issue of finality of the judgment appealed. Here we have an order which could have been enforced but for supersedeas regardless of its finality. Thus, there was a reason for supersedeas, as the parties and the district court recognized. Our decision simply fulfills that reason.

## CONCLUSION

{32} The court's order releasing the bond is reversed, and the case is remanded for entry of judgment against the Surety. On remand, the court may award, against Husband and Surety, costs sustained by Wife in bringing this appeal and, against Husband, attorney's fees.

{33} IT IS SO ORDERED.

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.