2008-NMCA-064

183 P.3d 975

**Burt C. McALPINE, Plaintiff,**

v.

**ZANGARA DODGE, INC., Defendant/Third–Party Plaintiff–Appellee,**

v.

**Mountain Shadow Motor Company, Inc., Third–Party Defendant,**

and

**Great American Insurance Company, Third–Party Defendant– Appellant.**

No. 26,766.

Court of Appeals of New Mexico.

March 26, 2008.

Corbin Hildebrandt, PC, Corbin Hildebrandt, Albuquerque, NM, for Appellee.

Miller Stratvert P.A., Deron B. Knoner, Albuquerque, NM, for Appellant.

## OPINION

CASTILLO, Judge.

{1} On motion for rehearing, the opinion filed February 20, 2008, is withdrawn, and the following opinion is substituted. The motion for rehearing is otherwise denied.

{2} This case requires us to consider three questions related to a bond (bond) that was issued under NMSA 1978, § 66–4–7(A) (2005). Does the bond cover only failure of title? Are the allegations of liability against a principal conclusively established against a surety when default judgment is entered against the principal? Was the denial of the surety's motion for summary judgment proper on the issue of fraud? We answer all three of the questions in the affirmative. Accordingly, we affirm the trial court.

## I. BACKGROUND

{3} In this case, Mountain Shadow Motor Company, Inc., (Mountain Shadow) is the principal, Great American Insurance Company (Great American) is the surety, and Zangara Dodge, Inc., (Zangara) is the purchaser, as contemplated by Section 66–4–7(A). The record provides the following facts. Burt McAlpine bought a truck from Zangara on January 3, 2002. After purchasing the truck, McAlpine came to believe that the truck had sustained serious damage in an accident. McAlpine brought suit against Zangara on September 12, 2002, and alleged fraud, unfair trade practices, and violations of the Motor Vehicle Dealers Franchising Act, NMSA 1978, §§ 57–16–1 to –16 (1973, as amended through 2003). On April 14, 2003, Zangara filed a third-party suit against Mountain Shadow and alleged the following: (1) Mountain Shadow sold the truck to Zangara, (2) Mountain Shadow made repairs to the truck before selling it to Zangara, and (3) Mountain Shadow did not disclose all of the repairs. Mountain Shadow initially entered an appearance and participated in the litigation, but on September 12, 2003, counsel for Mountain Shadow filed a motion to withdraw as counsel on the ground that Mountain Shadow had requested that counsel do no more work on the case. The trial court granted the motion on January 20, 2004. The trial court ordered that Mountain Shadow obtain new counsel within thirty days, but Mountain Shadow failed to do so. As a result of Mountain Shadow's continued failure to participate in discovery, on January 15, 2004, Zangara filed a motion to compel discovery or, alternatively, a motion to strike Mountain Shadow's defenses. Zangara also filed an amended third-party complaint on February 5, 2004, which included Great American as a third-party defendant. In the amended complaint, Zangara alleged that it had a right to recover against a bond issued by Great American to Mountain Shadow.

{4} On February 26, 2004, the trial court made an entry of default against Mountain Shadow for failure to participate in discovery. In March 2004, Great American filed a motion to dismiss against Zangara and argued that the bond did not cover the alleged

wrongdoing. That motion was denied, and Great American then filed a timely answer to the amended third-party complaint. In August 2004, Great American filed a motion to compel discovery against Zangara. In response, Zangara contended that Great American was bound by the entry of default against Mountain Shadow and that liability was therefore already established. The trial court disagreed and granted the motion to compel. In November 2004, Great American filed a motion for summary judgment against Zangara and claimed that Zangara could produce no evidence of fraud by Mountain Shadow. That motion was denied by the trial court.

{5} On January 6, 2005, McAlpine and Zangara reached a confidential settlement. Zangara requested a hearing so that damages could be entered against Mountain Shadow, pursuant to the entry of default granted almost a year earlier. Great American objected, arguing that the entry of default against Mountain Shadow was not binding on Great American. The trial court entered a sealed judgment in favor of Zangara and against Mountain Shadow on January 31, 2005.

{6} In October 2005, Zangara filed a motion for summary judgment against Great American and again argued that the entry of default against Mountain Shadow was binding on Great American. The trial court granted the motion and entered an order on April 13, 2006. Finding that Great American was bound by the entry of default, the court entered judgment for Zangara and against Great American for $50,000, the full value of the bond.

## II. DISCUSSION

{7} Great American appeals the denial of its motion to dismiss, the granting of Zangara's motion for summary judgment, and the denial of Great American's motion for summary judgment. We address each argument in turn.

### A. Great American's Motion to Dismiss

{8} Great American first argues that its motion to dismiss was improperly denied because pursuant to Section 66–4–7(A), the bond issued to Mountain Shadow does not cover fraudulent misrepresentations that are unrelated to failure of title. In relevant part, Section 66–4–7(A) reads as follows:

> The bond shall be payable to the state for the use and benefit of the purchaser and the purchaser's vendees, conditioned upon payment of any loss, damage and expense sustained by the purchaser or the purchaser's vendees, or both, by reason of failure of the title of the vendor, by any fraudulent misrepresentations or by any breach of warranty as to freedom from liens on the motor vehicle or motorcycle sold by the dealer, wholesaler, distributor, dealer of motorcycles only or auto recycler.

We review the denial of a motion to dismiss de novo. *See Gardiner v. Galles Chevrolet Co.*, 2007–NMSC–052, ¶ 4, 142 N.M. 544, 168 P.3d 116.

### 1. Statutory Interpretation

{9} Great American urges this Court to interpret the language of Section 66–4–7(A) so that a bond covers only the "failure of the title of the vendor" as the condition for payment. According to Great American, the statute's phrase "by any fraudulent misrepresentations or by any breach of warranty as to freedom from liens" indicates the two circumstances by which the condition for payment may arise. *Id.* Zangara, on the other hand, would interpret the statute so that bonds cover three conditions of payment: (1) failure of the title of the vendor, (2) any fraudulent misrepresentations, and (3) breach of warranty as to freedom from liens. In response, Great American contends that Zangara's interpretation of the statute renders the language "breach of warranty as to freedom from liens" superfluous because any breach of warranty as to freedom from liens would cause a failure of title. We agree with Zangara that the statute covers three separate conditions of payment.

{10} The first condition of payment, failure of the title of the vendor, refers to a scenario in which a dealer sells a vehicle to a buyer but the dealer did not have title to the vehicle at the time of the sale. The term "title" is defined as "[t]he union of all elements (as ownership, possession, and custody) consti-

tuting the legal right to control and dispose of property." *Black's Law Dictionary* 1522 (8th ed.2004). Thus, the first condition of payment protects a purchaser, or a purchaser's vendee, from a car dealer who does not have the legal right to dispose of a car but sells it to the purchaser regardless.

{11} The third condition of payment, breach of warranty as to freedom from liens, is distinguishable from the first condition of payment. The first condition involves the vendor's title to a vehicle and whether the vendor had the legal right to sell the vehicle. The third condition refers to the title that the buyer will receive from the vendor, which might be subject to a lien. *See State v. DeBaca,* 82 N.M. 727, 730, 487 P.2d 155, 158 (Ct.App.1971) (stating that a buyer may acquire title to a vehicle but the title may be subject to a lien). The third condition protects a purchaser, or a purchaser's vendee, from a car dealer who has good title to the vehicle but who has taken a lien against that good title. The car dealer is legally authorized to sell the vehicle, but the title is not free from liens with respect to a subsequent purchaser.

{12} Great American fails to notice that the first condition of payment refers to "failure of the title *of the vendor,*" not failure of title generally. Section 66–4–7(A) (emphasis added). In order to accept Great American's argument, we would have to ignore the language of the statute, as well as the distinction between the failure of the title of the vendor and an encumbrance on the title that a purchaser receives from a vendor. *See Krahling v. First Trust Nat'l Ass'n,* 1997–NMCA–082, ¶ 20, 123 N.M. 685, 944 P.2d 914 ("To the extent that [the] argument ignores the precise wording of the statute, we must reject it."). Accordingly, we read Section 66–4–7(A) to create three separate conditions of payment on the bonds.

## 2. Legislative History

{13} Great American also argues that the legislative history of Section 66–4–7(A) supports a reading of the statute that allows recovery only in the event of failure of the title. The legislature amended this subsection in 1961 to its present form, apparently in

response to *Commercial Insurance Company of Newark, New Jersey v. Watson,* 261 F.2d 143, 145 (10th Cir.1958). *See Prince v. Nat'l Union Fire Ins. Co.,* 75 N.M. 313, 316, 404 P.2d 137, 139–40 (1965). In pertinent part, the prior law read as follows:

> The bond shall be approved as to form by the Attorney General and shall be conditioned that said applicant shall conduct his business as a dealer or wrecker of vehicles without fraud or fraudulent representation, and that said applicant shall pay losses, damages and expenses that may be sustained by the purchaser by reason of the failure of the title to a motor vehicle or part thereof sold by such dealers or wrecker of vehicles.

1953 N.M. Laws, ch. 138, § 85. *Watson* interpreted the 1953 statute to apply "for the benefit of any one injured by the dealer's fraudulent conduct of his business, and also for the benefit of any purchaser injured by failure of title." *Watson,* 261 F.2d at 145. In *Prince,* our Supreme Court explained that in amending the statute, the legislature "saw fit to limit the coverage required of the bond [ ] and [made] it clear that one in the plaintiff's position is not covered by the protection of the statutory provision." 75 N.M. at 316, 404 P.2d at 140. Great American appears to suggest that the change in language from the 1953 statute to the current version was intended to (1) limit the coverage of the bonds to failure of the title and (2) eliminate the language that referenced "without fraud or fraudulent representation." This argument neglects to consider the context of both *Watson* and *Prince,* as well as other changes made to the 1953 statute after *Watson.*

{14} The central issue in *Watson* was whether the bond covered losses by a particular plaintiff. 261 F.2d at 145. The 1953 statute, on its face, covered only losses suffered by the purchaser of a bond, and the plaintiff in *Watson* was a vendee of the purchaser, a wholesale car dealer. *Id.* at 144. The Tenth Circuit looked to the predecessor of the 1953 version of the statute, which read that the bonds were "for the use and benefit of the purchaser and his vendees," *Watson,* 261 F.2d at 145 (internal quotation marks and citation omitted), and the appellate court

upheld the trial court's ruling that applied the bond to the purchaser's vendee. *Id.* at 144, 146–47. It was this confusion—about the applicability of the bond—that led the legislature to amend the statute to its present form and to reinsert the language "any loss, damage and expense sustained *by the purchaser or the purchaser's vendees.*" Section 66–4–7(A) (emphasis added).

{15} *Prince* does not contradict this reasoning. In *Prince,* the issue was whether the plaintiff retained the status of purchaser and was therefore protected by the bond. 75 N.M. at 315, 404 P.2d at 139. By this time, the 1953 statute had been amended to include "purchaser or his vendees" language. *See* NMSA 1953, § 64–8–6 (Supp.1975). It was in this context that the *Prince* Court stated the following:

> This particular statute was construed in *Commercial Insurance Co. of Newark, N.J. v. Watson,* 10th Cir.1958, 261 F.2d 143, wherein a wholesale dealer was allowed recovery on a retail dealer's bond, generally on the basis that the then statute was for the benefit of anyone injured by the dealer's fraudulent conduct in addition to being for the benefit of any purchaser injured by failure of title. It was after this decision by the Tenth Circuit that our legislature saw fit to limit the coverage required of the bond, and serves to make it clear that one in the plaintiff's position is not covered by the protection of the statutory provision.

*Prince,* 75 N.M. at 316, 404 P.2d at 139–40 (emphasis added).

{16} Though the 1953 statute was rewritten following *Watson,* the only added language was that regarding the purchaser or the purchaser's vendees. We do not read *Prince* to acknowledge that the revision of the 1953 statute eliminated fraudulent misrepresentation as a basis for recovering on the bond. In fact, as both parties to the present controversy point out, a dictum from *Prince* indicates that the Court presumed that fraudulent misrepresentation remained a recoverable basis. While considering a statute identical to the current version, the Court stated that "[t]he bond is to protect against failure of title or fraud at the time of

the purchase." *Prince,* 75 N.M. at 316, 404 P.2d at 139. Although Great American acknowledges that we accord great deference to such dicta from our Supreme Court, the surety urges us to depart from *Prince's* summary of the coverage of the statute. We decline to do so. We hold that the trial court properly denied Great American's motion to dismiss because fraudulent misrepresentation is one of three circumstances under which a purchaser of a bond, or a purchaser's vendee, can recover on the bond.

## B. Zangara's Motion for Summary Judgment

{17} Great American also challenges the trial court's granting of Zangara's motion for summary judgment. We review the trial court's grant of summary judgment de novo. *Bird v. State Farm Mut. Auto. Ins. Co.,* 2007–NMCA–088, ¶ 7, 142 N.M. 346, 165 P.3d 343. The trial court issued an order that stated the following: "By virtue of Zangara Dodge's default judgment against Mountain Shadow ..., there has been a finding of fraud by Mountain Shadow ... that supports Zangara['s] claim against the ... [b]ond issued by Great American pursuant to [Section] 66–4–7[.]" The order continued as follows:

> Under the facts of this case, Great American, as the surety of Mountain Shadow ..., is not entitled to assert as defenses to the claim of Zangara ... against the bond issued by Great American the defenses which were or could have been asserted by Mountain Shadow ... to the claim of fraud made against Mountain Shadow ... by Zangara[.]

Great American argues that it should not have been bound by the default judgment against Mountain Shadow and that Zangara should have been required to prove that its damages were caused by conduct covered by the bond. As explained below, we disagree.

### 1. Issue of First Impression

{18} Zangara relies on three cases in support of the proposition that under New Mexico law, a judgment against a principal is binding on a surety. These cases, however, are factually distinguishable from the present

case and therefore do not support Zangara's position. *See First State Bank v. Muzio,* 100 N.M. 98, 666 P.2d 777 (1983), *overruled on other grounds, Huntington Nat'l Bank v. Sproul,* 116 N.M. 254, 264, 861 P.2d 935, 945 (1993); *State ex rel. Dar Tile Co. v. Glens Falls Ins. Co.,* 78 N.M. 435, 432 P.2d 400 (1967); *Yoakum v. W. Cas. & Sur. Co.,* 75 N.M. 529, 407 P.2d 367 (1965). Unlike Great American, the surety in *Yoakum* had the opportunity to defend at trial. *See* 75 N.M. at 531, 407 P.2d at 368. The principal in *Glens Falls* did take a default judgment, but the surety made no effort "to overcome the prima facie case made." *See* 78 N.M. at 435–36, 432 P.2d at 400–01. In contrast, Great American has defended vigorously by filing several motions, including a motion to compel discovery from Zangara. In addition, the bond in *Glens Falls* made the surety liable for any judgment against the principal, while the bond issued by Great American is conditioned on the proof of loss, damages, or expenses. *See* § 66–4–7(A). In *Muzio,* a guarantor, not a principal, took a default judgment and then attempted to assert claims for homestead exemptions and priority. 100 N.M. at 100–01, 666 P.2d at 779–80. In none of these cases is a default judgment against a principal held to conclusively establish fraud such that a surety, without opportunity to defend, is required to pay on a bond. Accordingly, we view this issue as one of first impression in New Mexico.

## 2. The Restatement (Third) of Suretyship and Guaranty

{19} Great American relies on the Restatement (Third) of Suretyship and Guaranty (1996) "[f]or authoritative guidance on the common law" of guarantees. *Venaglia v. Kropinak,* 1998–NMCA–043, ¶¶ 9, 12, 125 N.M. 25, 956 P.2d 824 (looking to the Restatement (Third) of Suretyship and Guaranty for guidance). This Restatement takes the position that a default judgment against a principal is "evidence only of its rendition in a subsequent action of [an] obligee against [a] secondary obligor to enforce [a] secondary obligation." Restatement (Third) of Suretyship and Guaranty § 67(3). We note that this Restatement draws its conclusions in light of a general policy regarding default

judgments: "[T]he arguments of policy and efficiency against duplication of trials have little weight where there has not been a determination made by a fact finder after consideration of evidence introduced by both sides to the litigation." Restatement (Third) of Suretyship and Guaranty § 67 cmt. c. We are not convinced that the policy evinced by Section 67(3) of this Restatement is an equally persuasive statement of a surety's liability for the actions of its principal. For that, we review the case law from other jurisdictions.

## 3. Other Jurisdictions

{20} Both parties, in order to develop their respective arguments on appeal, direct our attention to cases from other jurisdictions. Great American cites *Gearhart v. Pierce Enterprises, Inc.,* 105 Nev. 517, 779 P.2d 93, 95 (1989), in which the Supreme Court of Nevada held that "the default judgment entered against [the principal] is not binding upon its surety." Great American also relies on *National Technical Systems v. Superior Court,* 97 Cal.App.4th 415, 118 Cal.Rptr.2d 465 (2002), for the following proposition: "As the surety did not stipulate that [it] would be absolutely bound by the judgment against the principal or permit [it] to conduct the defense and be themselves responsible for the result of it, the fact that the principal has unsuccessfully defended has no effect on their rights." *Id.* at 470 (alterations in original) (internal quotation marks and citations omitted).

{21} Meanwhile, Zangara depends on *Lake County ex rel. Baxley v. Massachusetts Bonding & Insurance Co.,* 75 F.2d 6 (5th Cir.1935), *Massachusetts Bonding & Insurance Co. v. Central Finance Corp.,* 124 Colo. 379, 237 P.2d 1079 (1951) (en banc), and *Drill South, Inc. v. International Fidelity Insurance Co.,* 234 F.3d 1232 (11th Cir.2000) (per curiam). *Baxley* noted the following:

> Where it appears that the judgment against the defendant was obtained in a suit of which the surety had full knowledge, and which it had full opportunity to defend, the judgment therein is not only evidence, but conclusive evidence, against every defense except that of fraud and collusion in obtaining it.

75 F.2d at 8. *Drill South* reached a similar conclusion: "The law requires only that a surety have notice and an opportunity to defend before it is bound by a judgment against its principal." 234 F.3d at 1236.

{22} Though *Baxley* and *Drill South* considered it necessary for the surety to receive notice and have an opportunity to defend against the default judgment, Zangara relies primarily on *Central Finance*, which simply held that "[t]he judgment against [the principal] is conclusive on the allegation of fraud." 237 P.2d at 1081. While Great American is required by statute to pay damages sustained by Mountain Shadow's vendees, Great American is also entitled to use those defenses that Mountain Shadow could have used to defend against Zangara's allegations. *See* Restatement (Third) of Suretyship and Guaranty § 34(1) (1996) ("[T]he [surety] may raise as a defense to the secondary obligation any defense of the principal ... to the underlying obligation[.]"). The holding in *Central Finance* would prevent Great American from asserting those defenses.

■ {23} We are persuaded that the better rule is found in *Baxley* and *Drill South*. Basic concepts of fairness dictate that a party have the right to notice and an opportunity to defend against allegations before liability can be imposed. However, we do not go as far as *Gearhart* and *National Technical Systems* because "the surety is viewed as an unconditional promisor whose liability is conditioned on the principal's liability." Ricardo Antaramian, *Suretyship Agreements and the Enron Surety Bond Litigation*, 4 Fla. St. U. Bus. Rev. 203, 208 (2004–05) (internal quotation marks and footnote omitted). Where the surety's liability is conditioned on that of the principal's, we cannot conclude that "the fact that the principal has unsuccessfully defended has no effect on [the surety's] rights." *Nat'l Technical Sys.*, 118 Cal.Rptr.2d at 470 (internal quotation marks and citations omitted). Accordingly, provided that the surety had notice and an opportunity to defend, we hold that the surety is bound by default judgment against the principal. *See Am. Safety Cas. Ins. Co. v. C.G. Mitchell Constr., Inc.*, 268 Va. 340, 601 S.E.2d 633, 637–40 (2004).

## 4. Notice and Opportunity to Defend

■ {24} Zangara argues that Great American had sufficient notice and opportunity to defend against the entry of default against Mountain Shadow. We agree. Zangara filed the amended complaint, which included Great American, on February 5, 2004. Great American entered an appearance on February 12, 2004, and the hearing on the motion to enter a default against Mountain Shadow was held on February 24, 2004. Great American—through its agent, Ashton Bonding—received notice of the hearing on the motion to enter a default on January 28, 2004. Indeed, Great American telephonically approved the entry of default against Mountain Shadow, as to form, on February 26, 2004. There is ample evidence in the record that Great American had notice of the pending entry of default against Mountain Shadow.

■ {25} We now turn to whether Great American had an opportunity to defend Mountain Shadow against the default judgment. "Sureties should not be excused[,] except for the best of reasons, and a liberal construction should be indulged against them." *Khalsa v. Levinson*, 2003–NMCA–018, ¶ 10, 133 N.M. 206, 62 P.3d 297. Although Great American noted in its pleadings that it reserved the defenses available to the principal, Great American did not intercede for Mountain Shadow at the default hearing on February 24. As a result, the trial court made an entry of default, which stated the following: "All allegations in the Third Party Complaint against Mountain Shadow ... are hereby deemed admitted." This hearing represented Great American's opportunity to defend Mountain Shadow's liability. Instead, Great American allowed the default to be entered, without challenge. The earlier reservation of defenses in the pleadings did not avail Great American after the entry of default because at that time, the defenses were no longer available to Mountain Shadow. If the defenses are not available to the principal because liability is established, it cannot be reasonable that the surety may continue to use those defenses in order to rebut allega-

tions that are already deemed to be admitted.

{26} The entry of default was a sanction against Mountain Shadow for failure to participate in discovery, and Great American contends that it did not have the access or the ability to defend Mountain Shadow from sanctions based on bad conduct. The purpose of the notice and opportunity inquiry is not to speculate about what the outcome of a certain action might have been. Instead, we consider whether the surety took advantage of an opportunity to defend the principal against a judgment as to liability.

{27} Great American argues that it had no right to act as Mountain Shadow's attorney-in-fact and that the surety therefore had no opportunity to defend against the default. The contract between Mountain Shadow and Great American contained the following language: "Surety shall have the right, but is not required to adjust, satisfy, compromise any claim, demand, suit or judgment upon said bond." We consider this language sufficient to convey to Great American the right to intercede on behalf of Mountain Shadow at the default hearing. *See Am. Safety Cas. Ins. Co.*, 601 S.E.2d at 637 (concluding that contract language substantially similar to that in the contract between Mountain Shadow and Great American clearly gave the surety the right to defend the principal); *see also Drill South*, 234 F.3d at 1236.

{28} This Court has explained before that "the liability of the surety depends upon the liability of the principal." *Holland v. Lawless*, 95 N.M. 490, 497, 623 P.2d 1004, 1011 (Ct.App.1981). By failing to contest the entry of default, Great American allowed Mountain Shadow's liability, and thus its own liability, to be established. Accordingly, we affirm the trial court and hold that Great American is not entitled to present a defense to liability on the bond because Great American had both notice and an opportunity to defend against the default judgment of the principal.

### C. Great American's Motion for Summary Judgment

{29} Great American also appeals the denial of its motion for summary judgment.

That motion was based on Great American's claim that Zangara could produce no evidence to support the elements of fraud against Mountain Shadow. Great American also contends that there is no dispute that the repairs made to the truck by Mountain Shadow were less than the statutory minimum dollar amount set in NMSA 1978, § 57–12–6(C) (1995), and that under the statute, Mountain Shadow was not required to disclose those repairs. On appeal, Zangara relies on the entry of default judgment against Mountain Shadow and argues that because the entry of default conclusively established fraud, Zangara was not required to produce proof to establish the elements of fraud or to establish that the repairs met the statutory minimum.

{30} It appears that the trial court denied Great American's motion for summary judgment based on disputed factual issues, rather than on the entry of default. We will, however, "affirm the district court if it is right for any reason and if affirmance is not unfair to the appellant." *DiMarco v. Presbyterian Healthcare Servs., Inc.*, 2007–NMCA–053, ¶ 9, 141 N.M. 735, 160 P.3d 916 (internal quotation marks and citation omitted). Though Zangara did not argue to the trial court that summary judgment for Great American was improper because of the entry of default, Zangara did use that argument in opposition to Great American's earlier motion to compel discovery. Considering that the trial court and all of the parties were familiar with the argument, we conclude that it would not be unfair to Great American for this Court to affirm the trial court's denial of summary judgment on the grounds that fraud was conclusively established by the entry of default.

### III. CONCLUSION

{31} We affirm the trial court's denial of Great American's motion to dismiss and motion for summary judgment, and we affirm the trial court's grant of Zangara's motion for summary judgment.

{32} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE and CYNTHIA A. FRY, Judges.