1998-NMCA-110

964 P.2d 844

**Mukta Kaur KHALSA, Petitioner– Appellee,**

v.

**Richard Lee LEVINSON, f/k/a Gurubhai Singh Khalsa, Respondent– Appellant.**

**No. 18211.**

Court of Appeals of New Mexico.

July 16, 1998.

**682**

Thomas Patrick Whelan, Jr., Santa Fe, for Petitioner–Appellee.

Kathryn M. Wissel, Geer, Wissel & Levy, P.A., Albuquerque, for Respondent–Appellant.

*OPINION*

ARMIJO, Judge.

{1} This appeal presents this Court with the opportunity to clarify the law concerning the circumstances under which a trial court's decision becomes an order and the circumstances under which orders on post-decree motions in domestic relations cases are final for purposes of appeal.

{2} For the reasons discussed below, we determine that the trial court's decision in this case is not final for purposes of Richard Lee Levinson's (Father) appeal because it neither includes decretal language nor provisions directing the entry of judgment. We further determine that when, as here, a decision resolves fewer than all the issues presented by post-decree motions, the decision, even if it contains the requisite decretal language, is not final and appealable unless (1) the trial court expressly determines, pursuant to Rule 1–054(C)(1) NMRA 1998 that there is no just reason for delay and expressly directs entry of judgment and (2) the matters adjudicated are not intertwined with issues that remain unresolved. We dismiss this appeal for lack of jurisdiction.

## FACTS AND PROCEDURAL POSTURE

{3} In 1992, Mukta Kaur Khalsa (Mother) sought a legal separation and divorce from her husband of eighteen years, then known as Gurubhai Singh Khalsa, now known as Richard Lee Levinson. The petition raised issues concerning the division of the marital estate, spousal support, and custody, visitation and support of the two minor children of the Parties. The Parties' daughter was ten years old and their son was four and a half years old at the time of the filing of the petition. The petition indicated that the son was living with Mother in New Mexico, while the daughter was living with Father outside New Mexico.

{4} Eventually, Mother and Father resolved the issues between them through a marital settlement agreement (MSA) and a parenting plan. Insofar as it is pertinent to the post-decree motions, the MSA divided the property and debts and awarded Mother a lump sum as spousal support. The MSA also provided that the Parties would have joint legal custody of their children, with Father having primary physical custody. The MSA further provided that Father waived child support from Mother and that this deviation from the child support guidelines was appropriate because Father could support the children and Mother could not.

{5} The parenting plan signed and filed by the Parties noted that the children had been raised as Sikhs and that Father considered himself a Sikh but no longer observed Sikh customs. It further provided that Father specifically agreed, despite his own views, to raise the children as Sikhs. He agreed to this in order to obtain Mother's agreement that he be the primary physical custodian. The parenting plan defined in detail the relevant Sikh customs which the children were to observe. They included, among other things, maintaining a vegetarian diet, refraining from cutting their hair, using their Sikh names as their legal names, and wearing a turban when in public. We refer to these collectively as the religious lifestyle provisions of the parenting plan. The parenting plan specifically provided that:

> a breach of these covenants [the agreement concerning the religious lifestyle pro-

visions] contrary to the best interests of the children by the parent having physical custody would constitute a "major change" under 40–4–9.1 NMSA 1978 Comp. which, unless advance permission has been obtained from the Court, would constitute grounds for the Court, in the exercise of its discretion, to transfer custody from one parent to the other, subject to the right in the Court to determine what is in the best interests of the children.

The parenting plan also provided that the New Mexico Joint Custody Statute, NMSA 1978, § 40–4–9.1 (1986) would be applied to the children and that the parents would communicate and be flexible about the needs of the children. On January 12, 1993 a final decree was entered that incorporated the provisions of the MSA and the parenting plan. Father and the children were living in Washington, D.C. by this time.

{6} Thirteen months after the final decree was entered, Mother filed a motion for modification of custody, for sanctions, and for an award of attorney fees. In her motion, Mother alleged that Father was systematically violating the religious lifestyle provisions of the parenting plan. Mother also alleged that at the time he signed the parenting plan and MSA, Father had no intention of abiding by those provisions. Mother further alleged that this change in the religious upbringing of the children threatened the best interests of the children and was a major change of circumstances. She asked that the trial court modify the custody arrangements by making her primary physical custodian, assess substantial financial sanctions against Father, and order Father to pay Mother's attorney fees and costs for the proceedings.

{7} Mother's motion was the first pleading in what, over the next several years, became a series of motions, supplements to motions, responses and counter motions that raised a series of interrelated issues. Each party sought to reopen or revisit the provisions of the MSA, although Father's contentions were directed at the child support provisions while Mother's were directed at the alimony and property provisions. Each party asked the court to order the other to pay all or part of the attorney fees or costs incurred in connection with the litigation. In addition to her request to reopen the MSA, Mother asked the trial court to hold Father in contempt and order him to pay substantial financial sanctions. Mother asked the court to determine that Father was liable to her for compensatory damages based on tort theories of intentional infliction of emotional distress, fraud, misrepresentation and alienation of the affection of the children.

{8} The issues concerning custody are more complex. Each party asked the court to modify the custody provisions of the MSA and the parenting plan although their proposals differed radically. Mother contended that Father had specifically violated the religious lifestyle provisions of the parenting plan and that this violation constituted a major change that affected the best interests of the children. She alleged that Father had violated the provisions of the parenting plan and the joint custody statute by failing to consult with her concerning major changes in the lives of the children. At various times she asked the court (1) to award her primary physical custody of the children; (2) to alternate primary physical custody every two years; (3) to hold Father in contempt for these violations; and (4) to defer ruling on her other requests and instead appoint a Rule 11–706 NMRA 1998 expert to mediate or, if necessary, arbitrate disputes between the parents.

{9} For his part, Father denied that he had violated the religious lifestyle provisions of the parenting plan. He contended that the religious lifestyle provisions were to apply to the children only so long as they were in their best interests, and that this was no longer the case. He argued that the religious lifestyle provisions of the parenting plan violated his rights or were unenforceable under the First Amendment to the United States Constitution. He argued Mother's summer visitation should be shortened to allow the children to participate in other activities during summer vacation. With respect to Mother's contention that he failed to consult with her, Father took the position that neither the law nor the parenting plan required him to consult with Mother concern-

ing major issues if such consultation would be detrimental to the best interests of the children.

{10} The trial court held an evidentiary hearing during three days in June 1994. In October 1994, the court entered an interim order concerning placement of the children. The order determined that, unless modified, the provisions of the parenting plan would remain in effect pending entry of a final order disposing of all issues concerning the parenting plan. In addition, it appointed a "case manager," defined the powers of the case manager, and required psychotherapy. Later, additional disputes developed over the case manager's role, transportation to and from New Mexico for summer visitation, and the length of the summer visitation. Over the next two years, the trial court held additional evidentiary hearings. However, the interim order referred to above was the only order signed by the judge and filed in the case until the December 1996 decision, discussed below.

{11} We initially assigned this case to the summary calendar with summary dismissal proposed because the decision did not appear to be a final order. Both Parties filed memoranda in opposition arguing that the decision was final and appealable. We note that the Parties also filed motions in this Court presenting quite different views of what issues were actually resolved by the trial court's decision. We then assigned this case to the expedited bench program with instructions that the Parties brief the question of finality. At oral argument both parties again vigorously argued in favor of the finality of the order. After oral argument it became apparent that the question of whether the decision was a final order for purposes of appeal warranted a formal opinion; thus, this appeal was removed from the expedited bench program.

## DISCUSSION

### A. Lack of Decretal Language

{12} In civil cases, this Court has jurisdiction over, among other things, "any final order after entry of judgment which affects substantial rights . . . ." NMSA 1978, § 39-3-2 (1966); see *Speckner v. Riebold*, 86 N.M. 275, 277, 523 P.2d 10, 12 (1974) (dis-

cussing the distinction between final judgments and final orders entered after entry of judgment). Whether an order is a "final order" within the meaning of the statute is a jurisdictional question that an appellate court is required to raise on its own motion. See *Montoya v. Anaconda Mining Co.*, 97 N.M. 1, 4, 635 P.2d 1323, 1326 (Ct.App.1981). Finality for purposes of appeal is viewed in a practical rather than a technical context and by looking to the substance of the document rather than its form. *Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992), *limited by Principal Mut. Life Ins. Co. v. Straus*, 116 N.M. 412, 415, 863 P.2d 447, 450 (1993).

{13} In civil non-jury cases, the trial court is required to file findings of fact and conclusions of law which are the decision in the case. Rule 1–052(B)(1)(a) NMRA 1998. The rules also require the entry of a judgment. Rule 1–054(B). The difference between the decision and the judgment is the inclusion of decretal language that carries the decision into effect by ordering that something happen or, when appropriate, by entering judgment for a sum certain in favor of one party and against the other party. Findings of fact and conclusions of law that do not contain decretal language are not appealable. See *Curbello v. Vaughn*, 76 N.M. 687–88, 417 P.2d 881–82 (1966); *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 119 N.M. 29, 37, 888 P.2d 475, 483 (Ct.App.1994). On appeal, this Court looks to the provisions of the order or judgment signed by the judge and filed in the case. See *Curbello*, 76 N.M. at 687, 417 P.2d at 881. When the trial court has entered findings on an issue but has not ordered that, based on those findings, something be done, this Court has held that the judgment does not resolve the issue to which the findings are addressed. See *Watson v. Blakely*, 106 N.M. 687, 691, 748 P.2d 984, 988 (Ct.App.1987) *overruled on other grounds by Kelly Inn No. 102, Inc. v. Kapnison*, 113 N.M. 231, 239, 824 P.2d 1033, 1041 (1992); *Thornton v. Gamble*, 101 N.M. 764, 767, 688 P.2d 1268, 1271 (Ct.App.1984).

{14} The December 1996 decision consists of fourteen pages of findings of fact and conclusions of law. The decision confirms

the appointments of the case manager and the guardian ad litem. In addition, the decision: (1) finds that Mother is entitled to an award of attorneys fees and costs of approximately $30,000; (2) rejects Father's contention that, under the law and the circumstances, he has no duty to consult with Mother concerning the children; (3) rejects Father's contention that Mother should be ordered to pay child support. In addition, the decision contains a conclusion stating that Mother's requests for reconsideration of the alimony and property provisions of the MSA, for contempt sanctions against Father, and for compensatory damages based on various torts theories should be held in abeyance. The decision refers to the controversy over the religious lifestyle provisions of the MSA but does not resolve it.

**{15}** We recognize that the trial court's decision is labeled an order and that it indicates that it is "final and appealable," a provision specifically requested by Father. We further recognize that the decision finds that Mother is entitled to an award in a definite amount for her attorney fees and costs. However, the decision did not specifically order that judgment be entered in Mother's favor for that amount. Additionally, the decision does not contain the signatures, initials, or reflect the approval of the attorneys for the Parties as required by Local Rule 1–304 NMRA 1998 for orders approved by the court. Moreover, while the decision makes detailed findings of fact on a number of issues, it does not actually grant or deny particular motions or order specific relief based on the findings and conclusions of the court. Thus, the decision, on its face, lacks decretal language and therefore is not a final order for purposes of appeal.

{16} While the lack of decretal language is a fatal flaw, it is a problem that can sometimes be cured by remanding the case to the trial court for the limited purpose of allowing the trial court to enter an amended order or a judgment carrying its decision into effect. However, in the present case, the judge who heard the evidence and issued the decision no longer serves as a trial judge and for the reasons discussed below, the

decision cannot be amended so as to constitute a final order.

### B. Unresolved Issues

**{17}** In general, " 'an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the trial court to the fullest extent possible.' " *Principal,* 116 N.M. at 413, 863 P.2d at 448 (quoting *Kelly Inn No. 102, Inc.,* 113 N.M. at 236, 824 P.2d at 1038); *B.L. Goldberg & Assocs. v. Uptown, Inc.,* 103 N.M. 277, 278, 705 P.2d 683, 684 (1985). In a dissolution proceeding, there is no final order unless and until an order is entered that contains decretal language and resolves all the matters raised in the initial petition. *Thornton,* 101 N.M. at 768, 688 P.2d at 1272. Similarly, when a motion to modify one or more of the modifiable elements of the decree is filed, an order resolving the motion is not final unless it contains decretal language and resolves all the issues raised in the motion. *Id. Thornton* does not explicitly address a situation like this one, where the issues presented to the Court have been developed through a series of pleadings. The decision in this case falls far short of resolving all the interrelated issues raised by the pleadings.

### C. Requirements of Rule 1–054(C)(1)

**{18}** Pursuant to Rule 1–054(C)(1):
[W]hen more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim or third-party claim, the court *may enter a final judgment as to one or more but fewer than all of the claims* only upon an *express determination that there is no just reason for delay.* In the absence of such determination, any order or other form of decision, however designated, which adjudicates fewer than all the claims shall not terminate the action as to any of the claims and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims.

The rule has generally been interpreted to require both an express determination that there is no just reason for delay and an

express direction for entry of judgment. *Aetna Cas. & Sur. Co. v. Miles,* 80 N.M. 237, 239, 453 P.2d 757, 759 (1969); *Central–Southwest Dairy Coop. v. American Bank of Commerce,* 78 N.M. 464, 465, 432 P.2d 820, 821 (1967); *Montoya,* 97 N.M. at 4, 635 P.2d at 1326. When a judgment contains both of these, it is considered "certified" under Rule 1–054(C)(1). Each of these provisions are absent here. We have specifically recognized that orders resolving fewer than all claims in dissolution proceedings or post-decree proceedings may be certified under Rule 1–054(C)(1). *See Thornton,* 101 N.M. at 768, 688 P.2d at 1272.

**{19}** The determination of a trial court to certify a judgment under Rule 1–054(C)(1) does not end the inquiry. Our cases indicate that there are at least two reasons why an appellate court will refuse to entertain an appeal even though the trial court certified the judgment under the rule. First, the order must still be final in the sense that it finally determines at least one discrete claim. *Sundial Press v. City of Albuquerque,* 114 N.M. 236, 240–41, 836 P.2d 1257, 1261–62 (Ct.App.1992). The word "claim" in this context should not be confused with different types of relief. In *Sundial Press,* the adult bookstore sought to continue doing business at the same location. However, the complaint raised three theories, each of which had a somewhat different form of legal relief (mandamus, money damages, prospective injunction and declaratory judgment that an ordinance was unconstitutional). This Court held that all these theories were directed towards one result, and, therefore, an order disposing of some but not all of the claims was not final even though it had been certified under Rule 1–054(C)(1). *Id.* at 242, 836 P.2d at 1263. In a similar vein, this Court has held that a trial court abuses its discretion by certifying an order that determines an issue common to some of the claims but does not actually dispose of any one claim. *Graham v. Cocherell,* 105 N.M. 401, 404–05, 733 P.2d 370, 373–74 (Ct.App.1987).

**{20}** Second, the trial court's determination that there is "no just reason for delay" is subject to review for abuse of discretion. *Roselli v. Rio Communities Serv.*

*Station, Inc.,* 109 N.M. 509, 512, 787 P.2d 428, 431 (1990). Our Supreme Court has held that a trial court abuses its discretion in certifying a judgment for immediate appeal under Rule 1–054(C)(1) when the issues decided by the judgment are intertwined, legally or factually, with the issues not yet resolved, or when resolution of the remaining issues may alter or revise the judgment previously entered. *Navajo Ref. Co. v. Southern Union Ref. Co.,* 105 N.M. 616–17, 735 P.2d 533–34 (1987); *Banquest/First Nat'l Bank v. LMT, Inc.,* 105 N.M. 583, 585, 734 P.2d 1266, 1268 (1987).

**{21}** We turn our attention to applying these principles to the case at hand. The decision in this case does not resolve all the issues presented by the pleadings. As noted earlier, the trial court did not certify the decision pursuant to Rule 1–054(C)(1) by expressly directing entry of judgment and expressly determining that there was no just reason for delay in entry of judgment. The trial court did indicate that the order is "final and appealable." We assume, without deciding, that by explicitly stating that the order is "final and appealable," the trial court sought to comply with the requirements of Rule 1–054(C)(1). However, because the decision, even if amended to conform to the requirements of Rule 1–054(C)(1), seeks to obtain appellate review of issues which are so intertwined with the issues held in abeyance and remaining to be resolved, appellate review appears premature. We discuss the provisions of the decision in order to illustrate the problems.

{22} Initially, we examine the provisions of the decision concerning child support. There are many reasons why a trial court might wish to resolve child support issues and enter judgment on them pursuant to Rule 1–054(C)(1) independently of the resolution of other issues. However, in this case, Father asked the trial court either to reopen the MSA and order Mother to pay child support or to order Mother to pay child support in spite of the provisions of the MSA, presumably because Father believed that there had been a material change in Mother's financial circumstances. The trial court's decision rejected both claims. The decision

specifically indicates, however, that Mother's request to reopen other provisions of the MSA is still pending.

{23} Similarly, we can think of many reasons why a trial court might wish to enter judgment pursuant to Rule 1–054(C)(1) that awards one party attorney fees and costs, even though other issues in the litigation have not been fully resolved. However, in this case, the basis for the award of attorney fees is unclear. On the one hand, the findings and conclusions of the trial court refer to a significant financial disparity between the Parties. On the other hand, the decision appears to base its award of fees at least in part on a finding that Mother had prevailed in the proceedings below. However, the decision does not fully resolve all of Mother's claims.

{24} The trial court's decision found as fact that Father signed the parenting plan to induce Mother to allow the children to reside with him; that at the time he signed the plan, he had no intention of keeping the promises on religious practices or on consultations prior to making major changes. However, the trial court's decision specifically held in abeyance Mother's requests to reconsider alimony and property division, for contempt sanctions and for asserted tort claims seeking compensatory and punitive damages for fraud, misrepresentation, the intentional infliction of emotional distress, and the alienation of the affections of her children. As to these issues, we think the trial court's decision does no more than determine a fact issue that is common to a number of claims without awarding any relief or addressing the propriety of raising tort claims at this stage of the proceedings. *Hakkila v. Hakkila*, 112 N.M. 172, 181–83, 812 P.2d 1320, 1329–31 (Ct.App.1991). The decision is not a final determination of any of these claims. *See Graham*, 105 N.M. at 404, 733 P.2d at 373.

{25} Finally, because the order focuses primarily on Father's duty to consult with Mother prior to making major changes in the lives of the children, it does not fully resolve the custody issues raised by the Parties. The pleadings raised several issues concerning the religious lifestyle provisions of the parenting plan: whether they were breached, whether such breach constitutes a change of circumstances that affects the welfare of the children and justifies modification of the custody arrangements, and whether the provisions should be eliminated, either because they are no longer in the best interests of the children or because they violate the First Amendment rights of Father or the children or both. The decision does not resolve these issues and some of the findings and conclusions that relate to these issues appear to be contradictory and are closely interrelated to the unresolved issues not ruled upon.

{26} We recognize that this court's decision necessarily means that the parties and their children will continue to live with uncertainty. We recognize that this case has been pending a protracted period of time. Upon remand, if the trial court's schedule cannot permit a prompt disposition of all issues, the trial court may wish to consider appointment of a special master so that all of the issues can be promptly resolved. Finally, we note the trial court's decision refers to a "case manager" and Rule 11–706 NMRA 1998 expert in the proceedings below. While we are unable to ascertain from statute or local rule the definition of or authority for appointment of a "case manager", upon remand, we suggest that the trial court reassess the scope of authority of both the case manager and Rule 11–706 expert.

**CONCLUSION**

{27} We hold that the trial court's decision in this case is not final for purposes of appeal because it does not include decretal language or enter judgment. We further hold that when, as here, a decision resolves fewer than all the issues presented by post-decree motions, the decision, even if it has decretal language, is not final and appealable unless the trial court expressly determines pursuant to Rule 1–054(C)(1) that there is no just reason for delay and expressly directs entry of judgment; in this regard, even if the decision had contained decretal language and had included the specific determinations required by Rule 1–054(C)(1), the appeal could be subject to dismissal where, as to some issues, the decision does not fully resolve any one discrete claim for relief, while, as to

other issues, the issues resolved in the decision are intertwined with issues that have not yet been resolved. Accordingly, this appeal is **DISMISSED.**

{28}  **IT IS SO ORDERED.**

DONNELLY and BUSTAMANTE, JJ., concur.