This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**IN THE MATTER OF THE PETITION**
**FOR A HEARING ON THE MERITS**
**REGARDING AIR QUALITY PERMIT**
**NO. 1655-M1-RV1**

**PAT TOLEDO,**

Petitioner-Appellant,

v.                                                                    **NO. 35,576**

**THE CITY OF ALBUQUERQUE and**
**SMITH'S FOOD & DRUG CENTERS, INC.,**

Respondents-Appellees.

**APPEAL FROM THE AIR QUALITY CONTROL BOARD**
**Felicia Orth, Hearing Officer**

Domenici Law Firm, P.C.
Pete V. Domenici, Jr.
Albuquerque, NM

for Appellant

City of Albuquerque
City Attorney's Office
Jessica M. Hernandez, City Attorney
Carol M. Parker, Assistant City Attorney

Albuquerque, NM

for Appellee City of Albuquerque

Sutin, Thayer & Browne
Frank C. Salazar
Lynn E. Mostoller
Albuquerque, NM

for Appellee Smith's Food & Drug Centers, Inc.

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

{1}     Petitioner-Appellant Pat Toledo (Toledo) seeks to appeal from the Albuquerque-Bernalillo County Air Quality Control Board's (the Board) order, entered April 14, 2016, addressing the City of Albuquerque Environmental Health Department Air Quality Program's (EHD) motion to reverse and remand EHD's granting of Permit No. 1655-M1-RV1 (the Permit). [II RP 51-54, 75-77, 89-90] In our notice of proposed disposition, we proposed to dismiss the appeal for lack of a final order. Toledo filed a memorandum in opposition to our proposed disposition; the City of Albuquerque (the City) filed a memorandum in support of our proposed disposition; and Smith's Food & Drug Centers, Inc. (Smith's) filed a memorandum in support of our proposed disposition. After due consideration, we dismiss the appeal for lack of a final order.

**{2}** "In civil cases, this Court has jurisdiction over, among other things, any final order after entry of judgment which affects substantial rights[.]" *Khalsa v. Levinson*, 1998-NMCA-110, ¶ 12, 125 N.M. 680, 964 P.2d 844 (internal quotation marks and citation omitted). "Whether an order is a 'final order' . . . is a jurisdictional question that an appellate court is required to raise on its own motion." *Id.* "[O]rdinarily an order remanding a case for further proceedings is not considered final for purposes of appeal[.]" *State v. Valerio*, 2012-NMCA-022, ¶ 14, 273 P.3d 12; *but see id.* (recognizing that "a remand order is final in certain circumstances, such as . . . where the remand directs the lower tribunal to perform a task requiring no exercise of discretion").

**{3}** EHD's motion to reverse and remand its own granting of the Permit was based on its acknowledgment that the notice requirements had not been followed. [II RP 51-54; *see also* II RP 72-74] EHD asked the Board to "reverse and remand the Permit to EHD so that EHD [could] re-notice the modification in compliance with all notice requirements and decide whether to issue the Permit after it [had] received and reviewed any public comment that [may] result[]." [II RP 53] On April 14, 2016, the Board entered the order at issue, which provides:

> The Permit is hereby reversed and remanded to EHD to give required notice to the City, to Bernalillo County, to the New Mexico Environment Department, and to the Environmental Protection Agency under 20.11.41.14(B)(8 and 9).

3

> Although the permit modification to increase throughput from 3 million to 5 million gallons is invalid, Smith's may continue to operate under the original permit consistent with all permit conditions and air quality regulations.

[II RP 76]

{4} In our notice of proposed disposition, we proposed to dismiss Toledo's appeal for lack of a final, appealable order because, following proper notice, EHD will need to decide whether to issue the Permit, which will require an exercise of its discretion. [CN 5-6] In response, Toledo asserts that "[t]he portion of the order that requires appropriate legal notice and opportunity to comment is not objected to, but the remaining portion of the order allowing interim operation cannot be challenged under this Court's proposed dismissal." [T MIO 6] His central contention is that Smith's should cease its interim operation because, according to Toledo, without the permit modification, Smith's lacks a valid permit to operate while the case is on remand to the EHD. [T MIO 3, 6-7]

{5} In its memorandum in support of our proposed dismissal for lack of a final order, the City contends that, following the order at issue, "EHD must decide anew whether to grant the [P]ermit." [C MIS 2] Therefore, the City agrees that, pursuant to *Valerio*, the Board's order to reverse and remand is not a final order for purposes of appeal. [C MIS 2-3] In response to Toledo's contention that Smith's is operating

without a permit, the City asserts that Smith's does have a valid permit. [C MIS 3-6] According to the City,

> Smith's acquired the original Robert's Oil permit authorizing throughput of three million gallons of gasoline per year. This was Permit No. 1655 when owned by Robert's Oil and became Permit No. 1655-RV1 once EHD processed the administrative revision to change the ownership from Robert's Oil to Smith's. The Air Board's rules allow changes of ownership of permits with no public notice. 20.11.41.28(A)(2)(a and b) NMAC (administrative permit revisions do not require notice by either the applicant or the Department). Hence, Smith's has a valid permit to operate the former Robert's Oil gas station with a throughput of three million gallons per year.

[C MIS 3-4] The City further asserts that the lack of notice in this case affects only the "*application to modify* Permit No. 1655 to authorize throughput of five million gallons. . . . The notice issue does not affect the original Permit No. 1655." [C MIS 4 (emphasis in original)] The City further argues that, "[u]nder the Air Board's rules, Smith's could acquire the associated permit and could request a change of ownership without any public notice because there is no change in the air quality impact regardless of who owns a permit." [C MIS 5] Additionally, the City claims that "the modified permit for five million gallons of throughput . . . was the only decision that was before EHD[.]" [C MIS 5] According to the City, "the original Robert's Oil Permit No. 1655 for three million gallons . . . was not before EHD." [C MIS 5] It is the City's position that Smith's had acquired Permit No. 1655 from Robert's Oil, Smith's submitted a change of ownership application—which does not require public

5

notice—and EHD permitted the change in ownership. [C MIS 5] "Hence, Permit No. 1655 became Permit No. 1655-RV1 allowing throughput of three million gallons of gasoline per year at the site of the former Robert's Oil and now Smith's gas station." [C MIS 5-6] Therefore, the City contends that "Smith's may only operate under the terms of the pre-existing Robert's Oil permit[.]" [C MIS 5]

{6}     In its memorandum in support, Smith's agrees that the order granting the EHD's motion to reverse and remand is not final. [S MIS 4-6] Smith's also contends that EHD's administrative revision and issuance of Permit 1655-RV1 is not before this Court. [S MIS 6-7] Smith's maintains that the EHD "took two actions in granting the permit under review in this case: (1) processed a permit modification requested by Roberts Oil, increasing the throughput from 3 million to 5 million gallons, and (2) processed an administrative revision, changing the ownership of the permit from Robert's Oil to Smith's." [S MIS 2; *see also* CN 3-4] Subsequently, "Toledo filed a petition appealing, 'the issuance of Permit 1655-M1-RV1 . . . allowing for [an increase of] throughput [to] 5 million gallons.'" [S MIS 2 (quoting II RP 2)] According to Smith's, "Toledo's petition did not seek to revoke the issuance of the original Permit No. 1655 or Permit 1655-RV1." [S MIS 3] Relying on 20.11.41.28(A)(1)-(2) NMAC, Smith's contends that "[t]here are no public notice

6

requirements for administrative permit revisions made in order to identify a change in ownership." [S MIS 4]

{7}     Having considered the information before this Court, we conclude that the order from which Toledo seeks to appeal pertains to the modification of the Permit—and not to the change in ownership of the Permit. [II RP 75-76] The order reverses and remands to the EHD to give the required notice "under 20.11.41.14(B) (8 and 9)[,]" which does not apply to revisions made in order to identify a change in ownership. [II RP 76] *See* 20.11.41.28(A)(1)(b) NMAC ("An administrative permit revision may be used by the department or requested by a permittee to revise a permit that has been issued pursuant to 20.11.41 NMAC in order to: . . . identify a change in ownership, name, address or contact information of any person identified in the permit[.]"); *see also* 20.11.41.28(A)(2)(a)-(b) NMAC ("An administrative permit revision shall: (a) not be subject to Subsection B of 20.11.41.13 NMAC, *Applicant's Public Notice Requirements* [and] (b) not be subject to 20.11.41.14 NMAC, *Public Notice by Department - Public Participation*[.]").

{8}     As discussed in our notice of proposed disposition, on remand, EHD will need to decide whether to modify the Permit, which is more than a ministerial action, rendering the order at issue a non-final order. *See High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1994-NMCA-139, ¶ 14, 119 N.M. 29, 888 P.2d 475 (providing

that "[a]n order remanding for further non-ministerial proceedings before a lower tribunal" is not a final order). Consequently, this appeal is premature. *See id.* ¶¶ 13-26 (dismissing a neighborhood association's appeal because its claim had been remanded for reconsideration by the City Council).

{9}     For the reasons stated in this opinion and in our notice of proposed summary disposition, we dismiss for lack of a final order. *See Thornton v. Gamble*, 1984-NMCA-093, ¶ 15, 101 N.M. 764, 688 P.2d 1268 ("If we do not have jurisdiction, we must dismiss.").

{10}     **IT IS SO ORDERED.**


_____
**JAMES J. WECHSLER, Judge**


**WE CONCUR:**


_____
**M. MONICA ZAMORA, Judge**


_____
**J. MILES HANISEE, Judge**