The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: <u>September 14, 2023</u>

**No. A-1-CA-40576**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH & FAMILIES**
**DEPARTMENT,**

      Petitioner-Appellee,

v.

**BRIAN F.,**

      Respondent-Appellant,

and

**ASHLEY F. a/k/a ASHLEY D., DAVID S.,**
**SANTEZ P., KEVIN S., and VERONICA S.,**

      Respondents,

and

**KENDALL K.,**

      Interested Party,

**IN THE MATTER OF JAXXON P., JOSHUWA**
**S., MAXINE F., and AUSTIN F.,**

      Children.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Court Judge**

Children, Youth & Families Department
Mary McQueeney, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Cravens Law LLC
Richard H. Cravens, IV
Albuquerque, NM

for Appellant

Laura K. Castillo
Hobbs, NM

Guardian Ad Litem

**OPINION**

**MEDINA, Judge.**

{1}     In this case we address whether a parent may appeal from a judgment terminating their parental rights to the children when the rights of unrelated parents and the children remain pending in the same district court action and where the district court has not certified the judgment as immediately appealable under Rule 1-054(B) NMRA. Concluding that permitting such an appeal comports with the legislative mandate to hear such appeals "at the earliest practical time[,]" *see* NMSA 1978, § 32A-1-17(B) (1999), we hold that the judgment terminating Appellant Brian F. (Father)'s parental rights is a final and appealable order. We also affirm the termination of Father's parental rights.

**BACKGROUND**

{2}     Appellant is the Father of Maxine F., born March 1, 2013, and Austin F., born March 17, 2012 (collectively, Children). According to an affidavit for an ex parte custody order, the Children, Youth and Families Department (CYFD) took Children into custody in February 2021 on allegations of an unsanitary home, drug use by Father and Ashley F., Children's stepmother, and Ashley F. having abandoned Children at a housing shelter. CYFD placed Children in nonrelative foster care. The district court later joined Children's biological mother as an interested party, and for

a period of time Children were placed with her in California. Mother died, and Children were later returned to nonrelative foster care in New Mexico.

{3}     On February 26, 2021, CYFD filed an abuse and neglect petition (Petition) in the district court, alleging, in relevant part, that Children were neglected as defined in NMSA 1978, Section 32A-4-2(G)(2) (2018).

{4}     "Father relocated to California soon after the case began." On March 8, 2021, after a hearing in which Father appeared telephonically and represented by counsel, the district court ordered that Children should remain in CYFD custody pending an adjudicatory hearing. The district court ordered Father to, among other things, undergo psychological evaluations, drug and alcohol assessment and testing, birth parent orientation, and to maintain regular communication with his attorney and CYFD caseworker. The district court also accepted and implemented CYFD's initial assessment and treatment plan.

{5}     CYFD's assessment plan reflected that Father's homelessness was a barrier to implementing visitation and indicated that CYFD would work with Father to establish a location and phone number where he could be reached. Father's treatment plan required Father to complete the following: (1) submit to random drug tests and hair analysis; (2) complete a psychological evaluation, a drug and alcohol assessment, and follow the recommendations of the assessments; (3) learn how to parent and supervise Children by participating in parenting classes at the Guidance

Center; (4) participate in counseling with a licensed counselor; (5) obtain sobriety and attend a drug treatment program; (6) financially provide for Children, maintain employment, and provide check stubs as proof of income from every paycheck.

{6} CYFD referred Father to the following agencies in Modesto, California where he was living; the Department of Workforce Development, New Hope Recovery for substance abuse, the Center for Human Services, the Parenting Resources Center, Haven's Women's Center for domestic violence classes, and Family Time Visitation Center to facilitate Zoom visits with Children. CYFD also provided Father with a phone number to call or text, an email to contact his caseworker, and an online service for a psychological evaluation.

{7} On August 16, 2021, after a trial on the merits, the district court found that there was clear and convincing evidence that Father neglected Children as defined by the Children's Code, pursuant to Section 32A-4-2(G)(2). The district court therefore entered an adjudicatory judgment and disposition as to Father. The district court concluded that Father "allowed . . . Children to live in an unsanitary and unhealthy home"; allowed Children "to be subjected to verbal and physical abuse" from their stepmother; "purchased and used meth[amphetamine] instead of securing safe, permanent housing" for Children; allowed Children to "live in [Father's] car for [two] weeks"; "knew [stepmother] was using meth[amphetamine] and left [C]hildren with her"; and "violated the restraining order between [Father] and

[stepmother]." Additionally, "Father could not be located when [stepmother] abandoned [C]hildren at a [domestic violence] shelter."

{8} The district court ordered Father to complete the new treatment plan. The treatment plan, among other things, required Father to (1) obtain safe and stable housing, (2) maintain weekly contact with CYFD, (3) obtain and maintain employment, (4) demonstrate proof of his ability to financially provide for Children, (5) attend parenting classes, (6) maintain a parental bond with Children by regularly visiting, (7) attend individual counseling, and (8) undergo a psychological evaluation.

{9} In March 2022, CYFD moved to terminate Father's parental rights, alleging that the causes and conditions of the neglect were unlikely to change in the foreseeable future despite CYFD's reasonable efforts to assist Father in adjusting to the conditions, which rendered him unable to care for Children, pursuant NMSA 1978, Section 32A-4-28(B)(2) (2005, amended 2022). The district court held a termination of parental rights hearing, at which several witnesses, including Father, testified. At the conclusion of the hearing, the district court terminated Father's parental rights, concluding it to be unlikely that Father's inability to parent Children would change in the foreseeable future despite CYFD's reasonable efforts to assist Father.

# DISCUSSION

## I.  Appellate Jurisdiction

{10}  In our notice of assignment to the general calendar we directed the parties to address "whether a parent is sufficiently aggrieved such that they should be permitted an immediate appeal from an order terminating parental rights when the rights of other parents and children remain pending in the district court action and the district court has not certified the order as immediately appealable under Rule 1-054(B)." Whether this Court has jurisdiction to hear an appeal is a legal question that we review de novo. *See State v. Heinsen*, 2005-NMSC-035, ¶ 6, 138 N.M. 441, 121 P.3d 1040.

{11}  In cases governed by the Rules of Civil Procedure, Rule 1-054 provides the standard for determining when a judgment is final if there are multiple parties and the judgment does not resolve all claims or all issues for each party. However, termination of parental rights cases are not governed by the Rules of Civil Procedure, but instead by the children's court rules. *Compare* Rule 10-101(A)(1)(a)(iv) NMRA ("[T]he [c]hildren's [c]ourt [r]ules govern procedure in the children's courts of New Mexico in . . . all matters involving children alleged by the state . . . to be abused or neglected as defined in the Abuse and Neglect Act including proceedings to terminate parental rights which are filed under the Abuse and Neglect Act."), *with* Rule 10-101(A)(5) ("[T]he Children's Code and the Rules of Civil Procedure for the

[d]istrict [c]ourts govern the procedure *in all other proceedings* under the Children's Code. In case of a conflict between the Children's Code and Rules of Civil Procedure for the [d]istrict [c]ourt, the Children's Code shall control." (emphasis added)); *see also State ex rel. Child., Youth & Fams. Dep't v. Djamila B.*, 2015-NMSC-003, ¶ 39, 342 P.3d 698 (declining to apply Rule 1-019 NMRA to an abuse and neglect case because it was a Rule of Civil Procedure and as such did not apply to these types of proceedings under Rule 10-101); *State ex rel. Child., Youth & Fams. Dep't v. Steve C.*, 2012-NMCA-045, ¶ 9, 277 P.3d 484 (stating that Rule 1-015 NMRA did not apply to an adjudication of abuse and neglect because the children's court rules— and not the Rules of Civil Procedure—applied). The children's court rules do not contain an analogous provision to Rule 1-054 pertaining to finality of a judgment or order. As such, we turn to general principles governing finality of judgments to guide our analysis.

{12}    NMSA 1978, Section 39-3-2 (1966) states that "[w]ithin thirty days from the entry of any final judgment or decision . . . in any civil action in the district court, any party aggrieved may appeal" to either our Supreme Court or this Court as jurisdictionally appropriate. "Whether an order is a 'final order' within the meaning of the statute is a jurisdictional question that an appellate court is required to raise on its own motion." *Khalsa v. Levinson*, 1998-NMCA-110, ¶ 12, 125 N.M. 680, 964 P.2d 844.

{13}   "The general rule in New Mexico for determining the finality of a judgment is that an order or judgment is not considered final unless all issues of law and fact have been determined and the case disposed of by the [district] court to the fullest extent possible." *Zuni Indian Tribe v. McKinley Cnty. Bd. of Cnty. Comm'rs*, 2013-NMCA-041, ¶ 16, 300 P.3d 133 (internal quotation marks and citation omitted). However, "[t]he term 'finality' is to be given a practical, rather than a technical, construction." *Massengill v. Fisher Sand & Gravel Co.*, 2013-NMCA-103, ¶ 16, 311 P.3d 1231 (internal quotation marks and citation omitted). "Where a judgment declares the rights and liabilities of the parties to the underlying controversy, a question remaining to be decided thereafter will not prevent the judgment from being final if resolution of that question will not alter the judgment or moot or revise decisions embodied therein." *Kelly Inn No. 102, Inc. v. Kapnison*, 1992-NMSC-005, ¶ 21, 113 N.M. 231, 824 P.2d 1033.

{14}   This case presents the question of whether the pending proceedings in district court related to the stepmother's children and their fathers and grandparents render the order terminating Father's parental rights nonfinal. Stated differently, the question we resolve is whether a case that includes unrelated parents and unrelated children must be fully resolved before a parent may avail themselves of their right to appeal. Under this circumstance, both Father and CYFD agree that the order is a final order within the meaning of Section 39-3-2. While we are not bound by the

7

parties' agreement on this issue, *see State v. Comitz*, 2019-NMSC-011, ¶ 25, 443 P.3d 1130, we hold that the order terminating Father's parental rights is final and appealable.

{15}     Here, the district court has resolved all issues with respect to Father and Children. The issues remaining below involve other children who are unrelated to Father. In addition, Children's biological mother has died and is no longer involved in these proceedings. Consequently, any factual finding or legal conclusion left to be made in this case will not alter, moot, or revise any portion of the district court's order terminating Father's parental rights. *See Kelly Inn No. 102, Inc.*, 1992-NMSC-005, ¶ 21.

{16}     We acknowledge the often cited policy of disfavoring piecemeal appeals, but forcing Father to wait to appeal until all parties and claims are resolved in the underlying case would not meaningfully serve this purpose. *See id.* ¶ 26 (acknowledging the policy disfavoring piecemeal appeals but stating that countervailing policy considerations are also relevant when determining the finality of an order or judgment). Rather, allowing an immediate appeal will "promote the equally important policy of facilitating meaningful appellate review of cases in which the aggrieved party exercises the constitutional right to an appeal." *Id.* ¶ 27; *see also* N.M. Const. art. VI, § 2 (providing that "an aggrieved party shall have an absolute right to one appeal"); *Govich v. N. Am. Sys.*, 1991-NMSC-061, ¶ 12, 112

N.M. 226, 814 P.2d 94 (stating that New Mexico has a strong policy "that courts should facilitate, rather than hinder, the right to one appeal"); *see also In re Esther V.*, 2011-NMSC-005, ¶ 37, 149 N.M. 315, 248 P.3d 863 ("Parents have a fundamental liberty interest in the care and custody of their children; due process of law is required before parents can be deprived of that right."). And in this context specifically, our Legislature has expressed an intention to prioritize these appeals. *See* § 32A-1-17(B) ("If the order appealed from grants the legal custody of the child to or withholds it from one or more of the parties to the appeal, the appeal shall be heard at the earliest practicable time."). Finally, the priority assigned by our Legislature to the interests of the child favors an immediate appeal. *See* NMSA 1978, § 32A-1-3(A) (2009) (stating that "the care, protection and wholesome mental and physical development of children . . . [are] the paramount concern"). Given Children's biological mother's death, the termination of Father's parental rights finally resolved all parental rights to Children. Prompt resolution of Father's appeal supports their interests.

{17}     Considering all of the foregoing, and giving the term "finality" a "practical, not technical, construction" we hold that this case is sufficiently final to permit immediate appeal. *See Kelly Inn No. 102, Inc.*, 1992-NMSC-005, ¶ 12. We caution that nothing in this opinion should be read to hold that Father would be sufficiently aggrieved to permit an immediate appeal if the case against Children's biological

9

mother was pending before the district court because that question is not before us at this time.

{18}   Having determined that this Court has jurisdiction over Father's appeal, we now turn to the merits of his claim that CYFD failed to show by clear and convincing evidence that it made reasonable efforts to assist Father in adjusting the conditions that rendered him unable to properly care for Children.

**II.   CYFD Made Reasonable Efforts to Assist Father**

{19}   Father contends that CYFD did not make reasonable efforts to assist him in adjusting the conditions that rendered him unable to properly care for Children because CYFD did not provide him with specific contact information or direction to the services he was referred to in California and because he was not given sufficient time to "work the case plan." We disagree.

{20}   "The standard of proof in cases involving the termination of parental rights is clear and convincing evidence." *State ex rel. Child., Youth & Fams. Dep't v. Vanessa C.*, 2000-NMCA-025, ¶ 24, 128 N.M. 701, 997 P.2d 833. On appeal, we do not reweigh the evidence; rather, we view the evidence in the light most favorable to the prevailing party. *See State ex rel. Child., Youth & Fams. Dep't v. Amanda H.*, 2007-NMCA-029, ¶ 19, 141 N.M. 299, 154 P.3d 674. "We indulge all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary." *State ex rel. Child., Youth & Fams. Dep't v. Cosme V.*,

2009-NMCA-094, ¶ 19, 146 N.M. 809, 215 P.3d 747 (alterations, internal quotation marks, and citation omitted). To the extent Father directs this Court to evidence that might support the opposite determination, we note that when this Court is presented with conflicting evidence, we defer to the district court's determinations of ultimate fact. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531.

{21} Section 32A-4-28(B)(2) provides that the district court shall terminate parental rights when

> the child has been a neglected or abused child as defined in the Abuse and Neglect Act and the court finds that the conditions and causes of the neglect and abuse are unlikely to change in the foreseeable future despite reasonable efforts by [CYFD] . . . to assist the parent in adjusting the conditions that render the parent unable to properly care for the child.

"In proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child, including the likelihood of the child being adopted if parental rights are terminated." Section 32A-4-28(A).

{22} The district court found, in relevant part, (1) "CYFD made reasonable efforts to assist Father in adjusting the conditions which render Father unable to care for . . . Children properly"; (2) "Father did not even minimally engage in his case plan over the fourteen months that this case was pending"; and (3) "[t]here was no evidence produced that Father is currently making or intends to soon make efforts to change

11

the causes and conditions of his neglect of . . . Children." As such, "Father is unable or unwilling to provide proper parental care or control for . . . Children" and "[t]he causes and conditions of the neglect of . . . Children by Father are unlikely to change in the foreseeable future."

{23} Father argues that CYFD did not make reasonable efforts to assist him in alleviating the causes and conditions that brought Children into custody, particularly in light of the fact that he was living in California and suffered from addiction. After careful review, we conclude that the district court's finding is supported by clear and convincing evidence.

{24} Here, CYFD attempted to assist Father repeatedly during the pendency of his case below. Racquel Leyva, Father's initial Permanency Planning Worker (PPW) testified that she assisted by developing Father's case plan; went over the case plan with Father at least ten times; mailed Father a copy of the case plan by certified mail; provided a copy of the plan to Father through email and text message; and that she set up a Zoom virtual meeting during which she shared her computer screen with Father as she went over the terms of his case plan with him. She testified that Father understood the case plan.

{25} In an effort to implement the case plan, Leyva testified that she made referrals for parenting classes, domestic violence classes, visitations with Father's Children at the Family Time visitation center, referred Father to Work Force Solutions where

Father was residing, made a referral for individual therapy, and made a referral for a psychological evaluation with Dr. Moor who performs evaluations through telehealth for remote clients. Leyva also asked Father to participate in virtual home visits and attempted to do so at least once a month but Father refused to participate. As a result of Father's refusal to participate in virtual home visits, Leyva was unable to determine whether the location where Father was staying was safe and appropriate.

{26} Leyva testified that she also held a Zoom virtual meeting with Father during which she made referrals to service providers for Father, called the providers on his behalf, and attempted to schedule appointments for Father while he was in the Zoom meeting with her. Leyva also referred Father to a New Mexico visitation center that would conduct virtual visits between Father and Children. However, according to Leyva, Father was "not interested" in doing an intake for visitation. Leyva testified that all of the services offered to Father were either free of charge, covered by Father's Medicaid plan, or would be paid by CYFD.

{27} Joshua Paine testified that he was Father's PPW from September 2021 through December 2021. Paine tried contacting Father almost every two weeks. Father did not return Paine's phone calls until October 20, 2021. Paine attempted to go over Father's case plan with him, but received a text message from Father stating that he was not going to work with anyone.

13

{28}     Father does not contest that any of the foregoing efforts were made. Rather, Father argues that we should view his situation of living in California as akin to a situation where a parent is incarcerated, requiring more individualized support given the restrictions on freedom caused by incarceration. *See, e.g.*, *State ex rel. Child., Youth & Fams. Dep't v. Hector C.*, 2008-NMCA-079, ¶ 25, 144 N.M. 222, 185 P.3d 1072 (considering the effects of incarceration on a parent's ability to work a treatment plan). We are not persuaded that living outside of New Mexico presents the same limitations on parental ability to comply with the requirements of a treatment plan as incarceration. CYFD's efforts show that it took Father's out-of-state living situation into account by referring him to providers who were local to him and to a provider that would provide services virtually. In addition, Father's first PPW attempted to schedule appointments for Father with those providers during a Zoom meeting. Accordingly, we see no merit to Father's complaint that CYFD did not provide assistance that was sufficiently tailored to Father's needs. *See State ex rel. Child., Youth & Fams. Dep't v. Patricia H.*, 2002-NMCA-061, ¶¶ 27-28, 132 N.M. 299, 47 P.3d 859 (stating that "CYFD is only required to make reasonable efforts, not efforts subject to conditions unilaterally imposed by the parent" and on appeal "our job is not to determine whether CYFD did everything possible; our task is limited by our statutory scope of review to whether CYFD complied with the minimum required under law"). To the extent that Father argues he was not given

14

sufficient time to work his treatment plan, this contention is undeveloped, and we decline to consider it further. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what [a party's] arguments might be.").

{29}    It is well established that "[w]hat constitutes reasonable efforts may vary with a number of factors, such as the level of cooperation demonstrated by the parent and the recalcitrance of the problems that render the parent unable to provide adequate parenting." *Patricia H.*, 2002-NMCA-061, ¶ 23. Our review shows Father repeatedly demonstrated an unwillingness to engage with his treatment plan. Father never participated in a psychological evaluation. When Leyva asked Father about it, Father responded that he would "get to it." Father later told Leyva that he was not interested in working his case plan because he felt like he had done nothing wrong and that CYFD was the one that failed him and Children. Father missed 20 percent of all scheduled visitation and refused to acknowledge the circumstances that brought Children into custody. Father never demonstrated proof that he participated in any services in California, and only provided a single paystub. Father was also hostile towards his second and third PPWs, and at one point threatened to sue or get them fired. Father did not maintain regular contact with CYFD, nor did Father demonstrate that he had obtained safe and stable housing as required by his treatment

15

plan. When Father's third PPW attempted to discuss substance abuse treatment with him, Father stated that he was "five days sober" from methamphetamine use.

{30} Father argues for the first time in his reply brief that Father's status as an addict explains his difficult behavior and may have been the sole reason his rights were terminated. Although Father's addiction status may have contributed to his inability or unwillingness to make the necessary changes to properly remedy the causes and conditions that brought Children into custody, the status itself was not the sole evidence presented to demonstrate this point. *See Cosme V.*, 2009-NMCA-094, ¶ 16 (stating that parents have a "continuing legal duty to care" for the children and failure to do so may support an adjudication of neglect); *see also State ex rel. Child., Youth & Fams. Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 24, 133 N.M. 827, 70 P.3d 1266 ("When balancing the interests of parents and children, the court is not required to place the children indefinitely in a legal holding pattern, when doing so would be detrimental to the children's interests." (internal quotation marks and citation omitted)).

{31} Based on the ample efforts made by CYFD to provide referrals, set up appointments and assistance for Father to work his treatment plan, along with Father's own failure to make any meaningful attempt to work his treatment plan as ordered, we conclude that the district court's finding that CYFD made reasonable efforts to assist Father in this case is supported by clear and convincing evidence.

*See State ex rel. Child., Youth & Fams. Dep't v. Keon H.*, 2018-NMSC-033, ¶ 48, 421 P.3d 814 ("Both [CYFD] and [the parent] are responsible for making efforts toward reunification of the family.").

**CONCLUSION**

{32}    For the foregoing reasons, we hold that this Court has jurisdiction over Father's appeal and that the district court's order terminating Father's parental rights is supported by clear and convincing evidence. Accordingly, we affirm the district court's order terminating Father's parental rights.

{33}    **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**J. MILES HANISEE, Judge**

_____
**JANE B. YOHALEM, Judge**